958 F.2d 375
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Artemio MARTINEZ-GALINDO, Defendant-Appellant.
 No. 91-1563.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 18, 1992.*
Decided March 25, 1992.
 
 Before BAUER, Chief Circuit Judge, and COFFEY and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Artemio Martinez-Galindo pleaded guilty to one count of possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). Martinez entered a conditional guilty plea preserving the right to appeal the district court's denial of his motion to quash his arrest and to suppress evidence. Martinez claims that law enforcement agents at O'Hare Airport searched his luggage without his consent, constituting an illegal search and seizure in violation of the Fourth Amendment.
 
 I. FACTS
 
 2
 The district court held an evidentiary hearing on Martinez's motion. Martinez testified at that hearing. He stated that he flew from Los Angeles to Chicago on June 12, 1990. Martinez admitted at the hearing that his bag contained cocaine. Before leaving Los Angeles, the defendant tied a piece of yarn to the two zipper tabs securing the luggage. Martinez stated that he placed the yarn on the tabs so he would know if the suitcase had been opened before he retrieved it. If he had noticed that the yarn was gone, he would not have claimed the luggage. Martinez further testified that he had sprinkled Carpet Fresh powder over the contents of the suitcase to disguise the cocaine's odor.
 
 
 3
 Martinez testified that he had never been in O'Hare airport prior to June 12, 1990. Thus when he got off the plane, he looked for directions to find his way to the baggage claim area. Martinez testified that he went down an escalator to the baggage claim area and smoked half a cigarette before he saw his bag on the carousel. He picked up his suitcase and began walking towards the exit. The defendant stated that he had proceeded about ten feet when he noticed a man walking beside him. The man grabbed Martinez's arm, identified himself as a police officer, and pulled Martinez to the side. The officer told Martinez that he wanted to talk with him. Martinez testified that two other men were present when he was stopped. One stood in front of the exit doors, and the other stood behind the defendant.
 
 
 4
 According to Martinez, the officer who pulled him aside asked him if he had just come from Los Angeles. Upon request, Martinez produced his alien registration card as identification. The defendant stated that the officer compared the card with the name on the suitcase. Upon noticing that the two names were different, the officer pulled the defendant's plane ticket out of his breast pocket. The defendant testified that the officer did not ask him any questions about the fact the name on his identification card differed from the name on the suitcase and the ticket. Instead, according to the defendant, the officer took Martinez's luggage, cut off the yarn and began to unzip the baggage. Martinez stated that the another police officer came from behind him and held one of Martinez's hands behind his back. When the bag was partially unzipped, the officer asked if he could look in the bag. Martinez replied that "You might as well. You're halfway done anyways." [sic]. Martinez testified that he did not feel that the officers gave him a choice. Finally, the defendant stated that at no time did any of the police officers tell him that he was free to leave or that he could refuse to allow the officers to open the bag.
 
 
 5
 Chicago police officers Michael Bobko and Thomas Kinsella also testified at the hearing. Both officers are assigned to the Drug Enforcement Administration task force at O'Hare airport. Not surprisingly, their accounts differ from that of the defendant.
 
 
 6
 Officer Bobko testified that he and Officer Kinsella were assigned to observe the passengers deplaning from a flight arriving from Los Angeles, a drug source city. He stated that he noticed the defendant because he was walking very rigidly and slowly down the jetway. Other passengers were passing the defendant. He and officer Kinsella began to follow Martinez. However, they passed him because he was walking so slowly. He stated that the defendant flitted his eyes, as if scanning the area. He and officer Kinsella stood behind a pole as they reached the area containing the security checkpoint for incoming passengers and the escalators that lead to the baggage claim area for departing passengers. He observed Martinez turn fully around before boarding the escalator.
 
 
 7
 Officer Bobko and Officer Kinsella waited a few moments, and then also took the escalator down to the baggage claim area. He observed the defendant standing at the baggage carousel at the opening where the luggage came out. Martinez appeared nervous, tapping his toes and drumming his fingers. Officer Bobko testified that he saw the defendant visibly jump and then take a bag from the carousel. The defendant set the bag down, looked around, and then picked up the luggage and began walking rapidly towards the exit. At this point he and Officer Kinsella walked next to the defendant. They identified themselves as police officers, showing their credentials, and asked if Martinez would speak with them. The officers denied touching the defendant or blocking Martinez's path to the exit. Both police officers described Martinez as appearing nervous. His hands shook and his complexion visibly paled. One officer testified that he could see the vein in Martinez's neck rapidly pulsing.
 
 
 8
 Officer Bobko asked to look at the defendant's plane ticket, which Martinez handed to him. The ticket was issued to a David Gonsalez. Officer Bobko asked to see some identification. An alien registration card identified the defendant as Artemio Martinez-Galindo. Both the plane ticket and identification card were returned to Martinez. At this point, Officer Kinsella was summoned by an electronic pager. Kinsella motioned to another officer to come closer, and left the scene.
 
 
 9
 Officer Bobko continued to question the defendant. The defendant told him that his cousin bought the ticket, but was unable to use it. When asked specific questions about his cousin, Martinez just looked from side to side, but did not answer any questions. Officer Bobko then asked Martinez if the suitcase belonged to him. The defendant answered that it was his, but that it contained only clothing. Martinez asked why he was stopped. Officer Bobko testified that at this point, he explained to the defendant that he was not being stopped, that the officer appreciated his cooperation, and that he was free to leave. Officer Bobko asked if there were any drugs in the luggage. Martinez stiffened, but emphatically denied that the bag contained any drugs.
 
 
 10
 Officer Bobko testified that he asked the defendant if he could search the suitcase. He told Martinez that he did not have a search warrant, and that the bag could not be searched without his permission. According to Officer Bobko, the defendant stated: "Sure. Why not. There's nothing in there. Go ahead and look." The officer snipped the yarn, opened the bag and found five rectangular packages, containing approximately five kilograms of cocaine. Martinez was immediately arrested.
 
 
 11
 The district court held that the officers' testimony was more credible than Martinez's account. Because she accepted the police officers' version of the events at the airport, she found that the encounter was not an illegal detention and that Martinez voluntarily gave his consent to the search of the suitcase. The court specifically credited Officer Bobko's testimony that he told the defendant that he was not under arrest, that the defendant did not have to answer questions, and that Martinez was free to leave. Further, the district court noted that the initial encounter was fairly brief and took place in a public place. The district court rejected Martinez's testimony that the officers physically pulled the defendant aside and blocked his path to the exit.
 
 II. ANALYSIS
 
 12
 On appeal, the defendant challenges the district court's finding that he consented to the search of his bag.[1] When the validity of a search depends on the suspect's consent, "the state has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given[.]" United States v. Novak, 870 F.2d 1345, 1353 (7th Cir.1989) (quoting Florida v. Royer, 460 U.S. 491, 497 (1983)). "Whether a person has voluntarily consented to a search is a factual question to be determined by examining all the circumstances surrounding the consent." United States v. Valencia, 913 F.2d 378, 381 (7th Cir.1990). Therefore, we will uphold a district court's finding of consent unless that factual finding is clearly erroneous.
 
 
 13
 The defendant claims that the officer's testimony was exceedingly improbable and, thus, should not have been credited by the district court. Martinez also argues that in light of the "extraordinary measures" he took to conceal his illegal activity, it is impossible to conclude that he decided to stay, even though the officers told him he was free to leave, and that he consented to the search of the bag. Martinez concludes that the district court's factual findings are clearly erroneous, and that the government failed to meet its burden of proving that he consented to the search.
 
 
 14
 We disagree. For the testimony of a witness to be incredible as a matter of law, "it must have been either physically impossible for the witness to observe that which he or she claims occurred, or impossible under the laws of nature for such an occurrence to have taken place at all." United States v. Dunigan, 884 F.2d 1010, 1013 (7th Cir.1989). Officers Bobko and Kinsella gave consistent testimony when describing the events of June 12, 1990. Nothing in their testimony defies the laws of nature or suggests that the officers were not in a position to be able to observe the events they described. The district court was confronted with two conflicting versions of the events leading to the discovery of the cocaine. The court specifically found that the police officers' testimony was more credible than the defendant's account. "In a swearing contest, the trials judge's (or jury's) choice of whom to believe is conclusive on the appellate court unless the judge credits exceedingly improbable testimony." United States v. Cardona-Rivera, 904 F.2d 1149, 1152 (7th Cir.1990) (emphasis in original). We find no error in the district court's acceptance of the officer's testimony.
 
 
 15
 For these reasons, the decision of the district court is
 
 
 16
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 The defendant does not specifically challenge the validity his encounter with the officers. Instead, he challenges their testimony concerning the encounter in an attempt to show that all of the testimony is incredible or exceedingly improbable