**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Jairo CARDONA–RIVERA and Gustavo Luna Sanchez, Defendants–Appellants.**

**Nos. 89–2095, 89–2179.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 8, 1990.

Decided June 12, 1990.

Thomas M. Durkin, William V. Gallo, Asst. U.S. Attys., Chicago, Ill., for U.S.

Mitchell D. Kreiter, Gerda N. Barker, Kreiter & Associates, Chicago, Ill., for Jairo Cardona-Rivera.

William J. Stevens, Thomas J. Royce, Chicago, Ill., for Gustavo L. Sanchez.

Before POSNER, RIPPLE, and KANNE, Circuit Judges.

POSNER, Circuit Judge.

Jairo Cardona-Rivera and Gustavo Luna Sanchez entered conditional pleas of guilty to federal drug offenses, were sentenced to prison, and now appeal, challenging the denial of their motions to suppress evidence used against them. At the hearing on their motions Judge Nordberg found the following facts, and his findings are not clearly erroneous. A reliable informant led Chicago narcotics officers to Luna, whom the informant described as a drug dealer, and the officers set a watch on Luna's apartment house. One day they saw him arrive in a car, and as he got out, another car, driven by (it was later discovered) Cardona, the other defendant, pulled up behind Luna's car and stopped. Cardona got out and went up to Luna. They had a brief conversation, at the end of which Luna went into the apartment building while Cardona returned to his own car, opened

the front passenger door, did "something at the floor or passenger seat area" (as one of the officers testified), emerged from the car holding a shopping bag, and entered the same building Luna had just entered. The officers could see that the bag that Cardona was carrying contained a bulky object or objects, which they suspected was a package or more of cocaine. Cardona emerged from the building a few minutes later, without the bag; opened the front passenger door again and again fussed a bit in the passenger area; then entered the car on the driver's side and drove away, followed by several officers in two cars. Other officers remained behind to keep watch on the apartment house.

The officers following Cardona saw him commit several traffic violations, such as speeding and running a stop sign. When Cardona finally reached his destination, stopped the car, and got out, one of the officers approached him, identified himself as a police officer, and asked to speak with him. Cardona bolted, but found his way blocked by his own car. By now there were three officers at the scene. The one who had first accosted Cardona asked him for identification. Cardona had none, but told the officer that he was driving on a ticket and that the ticket was in his car. It is the custom in Chicago that when a driver receives a ticket for a moving violation the policeman takes his license and until it is returned the driver "drives on the ticket," that is, uses the ticket as a temporary license. The officer entered the car to get the ticket and saw it lying on the floor in front of the passenger seat. He bent over to pick it up and as he did so saw a package underneath the seat and recognized it as a kilo brick of cocaine. The officers arrested Cardona and before leaving the scene tested the brick ("field tested" it) for cocaine. It tested positive.

The officers who had arrested Cardona returned to the apartment house to join the surveillance of Luna. Within minutes of their arrival Luna emerged, carrying a leather briefcase with zippered compartments. The officers accosted him, identified themselves, and asked whether he would be willing to speak with them. He said yes. One of the zippers on the briefcase happened to be open and an officer who had an unobstructed view inside the unzippered compartment saw two packages that he recognized as kilo bricks of cocaine. He arrested Luna, gave him his *Miranda* warnings, and asked him what was in the packages. Luna replied, "coke." The officers took the packages back to the federal building, and several hours later, without having tried to get a search warrant, opened the packages and tested the white powder inside them; it was indeed cocaine.

All this is according to the officers, but the judge believed them. In a swearing contest, the trial judge's (or jury's) choice of whom to believe is conclusive on the appellate court unless the judge credits *exceedingly* improbable testimony, and here the officers' testimony as to what they saw and what Luna said was merely improbable. Some cases, notably *United States v. Dunigan*, 884 F.2d 1010, 1013 (7th Cir.1989), and *United States v. Kuzniar*, 881 F.2d 466, 471 and n. 1 (7th Cir. 1989), go further in formulating the principle of deference to the factfinder's resolution of questions of credibility. They say it can be overturned on appeal only if the testimony that the factfinder believed was contrary to a law of nature, as when an officer testifies that he saw around a corner (without the aid of a mirror or other reflector) or that he has X-ray vision. Other cases, illustrated by *United States v. Edun*, 890 F.2d 983, 989 (7th Cir.1989), formulate the test in more general terms, consistent with the Supreme Court's observation in *Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985), that a witness's story may be "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it," in which event the appellate court is not bound by the factfinder's decision to believe the story. *Anderson* was a civil case, but the same standards apply to the appellate review of factfindings made in deciding a motion to suppress evidence in a criminal case. *Maine v. Taylor*, 477 U.S. 131, 145, 106 S.Ct. 2440, 2450, 91 L.Ed.2d 110 (1986);

*United States v. Grier,* 866 F.2d 908, 935 (7th Cir.1989).

However the test for appellate review of credibility determinations be formulated, the defendants in this case must lose. The officers' testimony was not incredible. It did not challenge our understanding of nature. It did not even, as in *Schultz v. American Airlines, Inc.,* 901 F.2d 621 (7th Cir.1990), challenge the unanimous testimony of disinterested witnesses. The only testimony opposed to that of the officers came from the defendants, who were of course interested parties too. The problem of dishonest police testimony is a very old one, but drug dealers are not models of rectitude. The task of determining whose testimony is more truthful is a difficult one in such cases, and it is performed by the trier of fact with little effective power of intervention by the appellate court. *Gibbs v. Pierce County Law Enforcement Support Agency,* 785 F.2d 1396, 1402 (9th Cir.1986).

The only questions raised by these appeals are whether the seizure of the brick of cocaine from Cardona's car, and the search without a warrant of the packages taken from Luna's briefcase, violated the Fourth Amendment's prohibition of unreasonable searches and seizures. Cardona does not complain about the search of his package of cocaine, for if it was properly seized, then it was lawfully searched pursuant to the automobile exception to the requirement of a warrant.

Police can accost and ask to speak with a person without any grounds at all. *Florida v. Royer,* 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983) (plurality opinion); *United States v. Serna–Barreto,* 842 F.2d 965, 966 (7th Cir. 1988). So we need not worry ourselves over whether the officers had more than the barest suspicion that Cardona was a drug dealer when they accosted him. When he fled, they seized him and demanded identification. They were entitled to do this—to stop him briefly, short of arrest—if they had what is called in legal jargon an "articulable suspicion" that he was engaged in illegal activities: something less than probable cause to arrest, but more than mere hunch. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Serna–Barreto, supra,* 842 F.2d at 966. They had more than a hunch here. Cardona had been seen in conversation with someone whom a reliable informant had fingered as a drug dealer; had been seen delivering a shopping bag at the same address a few minutes later, presumably to the suspected dealer, with whom he had just been talking; had panicked when peaceably approached by an officer, fled, and run headlong into his own car. These circumstances—the second and third of which were missing in *United States v. Ingrao,* 897 F.2d 860 (7th Cir. 1990), where we reversed—created sufficient grounds for belief that Cardona was involved in drug trafficking to justify the officers in stopping him briefly to demand identification and a plausible account of what he was up to and why he had tried to flee.

True, the officers testified that when they first stopped Cardona, it was for traffic violations. This testimony is not worthy of belief; even less worthy of belief, given the Chicago custom of "driving on the ticket," is the government's argument to us that the officers had probable cause to arrest Cardona for driving without a license. They were not traffic officers and did not even have ticket books. It is obvious why they stopped Cardona, and they had objectively reasonable grounds for doing so. They did not need a pretext, so the fact that they offered one at trial, and the government another one on appeal, will not defeat the lawfulness of the stop and of the ensuing escalation to arrest. Cf. *United States v. Trigg,* 878 F.2d 1037, 1040–41 (7th Cir.1989). If the only reasonable basis for stopping Cardona had been his commission of minor traffic offenses, and the real reason for the arrest had been a pure hunch that he was carrying drugs, then we would have a true case of pretext, and several courts would hold the stop and ensuing arrest illegal. *United States v. Guzman,* 864 F.2d 1512, 1515–18 (10th Cir. 1988); *United States v. Smith,* 799 F.2d

704 (11th Cir.1986). But this court would not, having rejected the concept of unlawful-because-pretextual searches in *Trigg.*

The government is not content to rest on *Trigg.* Indeed, while sketching the argument that persuaded this court in that case, it did not cite the case to us although it had been decided months before the government filed its brief in this case. Instead, baroquely elaborating on its argument that the officers were actually arresting Cardona for traffic violations, the government adds that those violations were a tip-off that he was a drug dealer and further that the officers were such students of solid geometry that they could recognize the shape of multiple bricks of cocaine inside an opaque shopping bag. The suggestion that a person who is carrying illegal drugs is particularly likely to violate the traffic laws is much less plausible than its opposite. A person driving with cocaine under his front seat is unlikely to violate the traffic laws because that would invite the attention of the police. It is no surprise, therefore, that in other cases—for example, *United States v. Smith, supra,* 799 F.2d at 707—the government has argued that the sign of a drug dealer is that he drives with abnormal care not to violate the traffic laws. The United States Attorney for the Northern District of Illinois (the same office as in this case) made this argument in a case argued just nine days after the present case was argued, to a panel that included two of the judges on the present panel. "The government now advances the proposition that careful, nonevasive driving within the law can be suspicious activity and may be used as a fact to establish probable cause." *United States v. Ingrao, supra,* 897 F.2d at 865. We are not enamored of inconsistent arguments from the government in drug cases and are inclined to give neither argument in an inconsistent pair any weight. Similarly, we do not believe—and needless to say there is no evidence—that a shopping bag containing several bricks of cocaine looks any different from a shopping bag containing several books or videotapes or boxes of detergent.

But all this is by the by. The officers were entitled to demand identification from Cardona, and when he told them that they would find it, in the form of a ticket, in his car, they were entitled to enter the car and look for it. It would have been reckless for them, suspecting what they did, to let *him* enter the car and rummage for the ticket, for he might have had a gun under the seat or in the glove compartment. So the action of the police in entering the car was lawful, and there in plain view was the kilo brick of cocaine (or so the district judge found; the police report said nothing about cocaine being in plain view). As we shall see when we come to discuss Luna's case, a wrapped brick of cocaine does not necessarily proclaim its contents so unequivocally as to justify a search without a warrant. But given everything else the officers knew, the sighting of a package that looked a great deal like a package of cocaine gave them probable cause to arrest Cardona and seize the package; and having seized it lawfully from an automobile, they were entitled to test it in the field without getting a warrant. *United States v. Ross,* 456 U.S. 798, 817–25, 102 S.Ct. 2157, 2168–73, 72 L.Ed.2d 572 (1982); *United States v. Johns,* 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985).

Cardona makes much of the fact that the package was not seen "inadvertently." The officers had already formed the suspicion that he had cocaine beneath or in front of the passenger seat; the seizure was not serendipitous. The standard formula for the plain-view exception to the requirement of a search warrant recites inadvertence as one element, *United States v. Reed,* 726 F.2d 339, 343 (7th Cir.1984), yet the Justices of the Supreme Court have evinced skepticism, *Texas v. Brown,* 460 U.S. 730, 743, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (plurality opinion), as have we, *United States v. Rivera,* 825 F.2d 152, 157 (7th Cir.1987); and in most cases in which the plain-view exception is invoked and upheld, the police are not in the least bit surprised by what they discover. It is not that they are investigating an antitrust

offense and discover cocaine, or investigating a sale of cocaine and discover the carcass of an illegally shot moose; those would be true cases of inadvertent discovery. The police obtain entry into a suspected drug dealer's home, perhaps by the consent of the occupant, and, lo and behold, there in plain view are the drugs. They can be seized lawfully without a warrant. The only requirement is that the police be lawfully in the place from which they see the contraband or other goods that are subject to being seized. That requirement is satisfied here, since the officer was lawfully in the car to look for the ticket and it was while looking for it that he saw the package of cocaine.

After this opinion had been approved and dispatched to the printer, the Supreme Court formally interred the "inadvertence" requirement, as anticipated in this opinion. *Horton v. California,* — U.S. —, 110 S.Ct. 2301, — L.Ed.2d — (1990). What survives, however, is the obvious point that the police may not, by violating property rights or the right of privacy, bring about the situation in which the things they seize are in plain view. *United States v. Rivera, supra,* 825 F.2d at 157. Police cannot break into an apartment in search of cocaine and defend the lawfulness of the search by discovering the cocaine in plain view once they are in the apartment. But, as *Horton* has now placed beyond doubt, they can seize whatever contraband or evidence of crime they see in the course of a lawful search, provided they do not exceed the bounds of that search: if they are looking for a doberman pinscher they cannot search the pockets of trousers hanging in the closet and seize whatever their hands bring into sight, even if they are lawfully in the closet to make the search.

We turn to Luna's appeal. Luna does not question the existence of probable cause to arrest him and seize his briefcase with the packages of cocaine (and—the mark of an up-to-date drug dealer or stockbroker—the cellular telephone that was also in the briefcase). He objects only to the opening of the packages at a time when and place where it would have been easy for the officers to seek a warrant. The packages were sitting safely on a desk in this building, hours after they had been seized, when the officers decided to open them. Luna was sitting safely in a cell. The officers had time to apply to a magistrate for a warrant to search the packages without compromising any significant law enforcement interest.

The general rule is as Luna argues: a search warrant is required to open a package (other than a package found in a vehicle) and look inside. *United States v. Jacobsen,* 466 U.S. 109, 114, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). Unless there is an emergency you cannot search a person's things without either his consent or a warrant, however suspicious those things are; this is a corollary of the modern rule that a warrant is a condition precedent to a lawful search or seizure, other than in exceptional circumstances of which superfluity is not one. No emergency would have made it impractical or even inexpedient to obtain a warrant to search Luna's packages. The inconvenience would have been trivial yet a triviality possibly worth incurring for the sake of upholding the principle, ahistorical but pragmatic, that a magistrate rather than a police officer should decide whether the police can go rummaging through people's handbags, briefcases, packages, and other containers.

Several Justices—almost certainly a majority—believe however that if the shape or other characteristics of the container, taken together with the circumstances in which it is seized (from a suspected drug dealer, or a harmless old lady?), proclaim its contents unambiguously, there is no need to obtain a warrant. Five Justices so opined in dictum in *Arkansas v. Sanders, supra,* 442 U.S. at 764 n. 13, 99 S.Ct. at 2593 n. 13; see also *United States v. Jacobsen, supra,* 466 U.S. at 119, 104 S.Ct. at 1659; *Texas v. Brown, supra,* 460 U.S. at 750–51, 103 S.Ct. at 1547–48 (concurring opinion); *United States v. Miller,* 769 F.2d 554, 560 (9th Cir.1985). We so held in *United States v.*

*Eschweiler*, 745 F.2d 435, 440 (7th Cir. 1984). The clearest case (pun intended) is where the container is glass, so that the contents are visible to the world. By using a glass container the owner has so far waived his right of privacy that it would be pedantic to require the police to obtain a warrant if they want to get inside the container, say to test the contents for their chemical composition, as here. Or the container might be a wrapping that hugs the contour of the object it contains (the Maltese Falcon, say); again the owner has waived his right of privacy.

But this is not the occasion to invoke the "single-purpose container" doctrine, and not only because a kilo brick of cocaine wrapped in plain brown paper fastened with tape is not as revealing of its contents as the examples we have given. For here the waiver of privacy was direct and explicit. Asked what the packages contained, Luna said "coke" (he denied this at the suppression hearing, but the judge disbelieved him). He stripped the cloak of secrecy from the package. It was as if he had unwrapped it and pointed. Once Luna admitted that his package contained a contraband substance, no lawful interest of his could be invaded by the officers' opening the packages, whether on the spot or later in their office. No purpose would be served by insisting on a warrant in such a case or by setting aside the conviction because of the absence of a warrant. Of course there are grounds for skepticism about the testimony of the police that Luna acknowledged that the packages contained cocaine; among these grounds is the omission of any reference to the acknowledgment in the police report. But the truthfulness of the police testimony would not be tested in a proceeding to obtain a warrant. Such proceedings are not adversarial. All the police would need would be an affidavit by the officer—the equivalent (except *not* subject to cross-examination) of the testimony given before the judge in this case.

AFFIRMED.