In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2892

United States of America,

Plaintiff-Appellee,

v.

Stacy L. Briggs,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:00-CR-46--William C. Lee, Chief Judge.

Submitted November 13, 2001/*--Decided November 30, 2001

   Before Flaum, Chief Judge, and Bauer and
Evans, Circuit Judges.

   Flaum, Chief Judge.   After Stacy Briggs
was charged with possession of a
controlled substance with intent to
distribute, 21 U.S.C. sec. 841(a)(1), he
moved to suppress incriminating
statements he made to police. He argued
that the statements resulted from
improper "interrogation" by police after
he had invoked his right to counsel. The
district court declined to suppress the
statements. After entering a conditional
guilty plea, Briggs filed this appeal. We
affirm.

I.  Background

   Around 1:00 a.m. on August 31, 2000,
Indiana State Police trooper Andrew
Sparks stopped a 1985 Chevrolet pick-up
truck driven by Briggs because the
vehicle's license plate light was burned
out. Officer Sparks ran a license check
on Briggs and his passenger, Clemmie
Trigg, and learned that neither had a
valid Indiana driver's license. Sparks
also discovered that the truck was
registered to Jeff Lattimore, whom Briggs
claimed was his cousin. Sparks issued a
citation to Briggs for driving on a
suspended license and, after determining
that the truck could not be left on the
side of the road without posing a safety

hazard, called for a tow truck. Additional police officers arrived shortly thereafter. In accordance with police policy, the police searched andinventoried the truck before towing. They found a baggie of crack cocaine under the driver's seat. Briggs and Trigg were arrested and taken to the Wells County Jail.

At the jail, Detective Lieutenant Barry Story advised Briggs of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Lt. Story asked Briggs if he would be willing to sign a waiver and speak with him. What happened next is in dispute. At the suppression hearing, Briggs testified that he told Lt. Story he would not sign the waiver because he wanted to speak with an attorney. According to Briggs, Story did not stop the interrogation but instead warned Briggs that both he and Trigg were facing 20 to 50 years in prison. Briggs recalled that he protested, "[T]hat's not fair," because Trigg "had nothing to do with it." He testified that he told Story the drugs were his and that he had intended to sell them in Marion, Indiana.

Lt. Story testified to a different version of events. He claimed at the suppression hearing that immediately after he read Briggs his rights, Briggs announced without any prompting that the drugs did not belong to Trigg. Story recalled asking Briggs again if he was going to sign the waiver, and Briggs replied that "he'd probably better talk to an attorney first." Story said that he would take him back to the holding cell. Briggs then reportedly asked Lt. Story what would happen to Trigg, and Story replied that he thought both men would be charged with possession of cocaine. According to Story, Briggs said "that's not fair" because the drugs belonged to him and not Trigg. Briggs then described how he had planned to sell the drugs in Marion. As Briggs continued to describe his activities, Story recalled warning him to stop talking because he said he wanted an attorney present. But Briggs replied, "[I]t doesn't matter anyway. I'm going to die." Story, concerned that Briggs might be suicidal, asked Briggs what he meant by that statement. Briggs said he thought he would either be killed by the people who gave him the drugs or would spend the rest of his life in

prison.

After he was charged with possession of drugs with intent to distribute in violation of 21 U.S.C. sec. 841(a)(1), Briggs moved to suppress his incriminating statements, arguing that they resulted from improper "interrogation" by Lt. Story after he had invoked his right to counsel. The district court, after hearing testimony from both Story and Briggs, credited the officer's account. The court determined that Briggs had initiated further communications with the police, thus making his statements voluntary. Briggs later entered a conditional guilty plea, reserving his right to appeal the issues decided in the suppression hearing. The court sentenced Briggs to 70 months' imprisonment and five years' supervised release. Briggs filed a timely notice of appeal.

II.  Discussion

A person who is interrogated while in police custody has the right to request the assistance of a lawyer. Miranda, 384 U.S. at 469-70; United States v. Jackson, 189 F.3d 502, 510 (7th Cir. 1999). Once a suspect invokes the right to counsel, the police must cease all interrogation until counsel is present, unless the accused himself initiates further communication. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981); Jackson, 189 F.3d at 511. If police improperly interrogate the accused after he has invoked his right to counsel, any incriminating statements he makes are inadmissible. Edwards, 451 U.S. at 487.

"Interrogation," so as to trigger the right to counsel, means direct questioning by the police, as well as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980); United States v. Westbrook, 125 F.3d 996, 1005 (7th Cir. 1997). If the accused makes a statement in response to some words or actions by the police that do not constitute interrogation, or if the accused himself initiates further communications, the police are not prohibited from "merely listening" to his voluntary statement.

Edwards, 451 U.S. at 485. "Volunteered statements of any kind are not barred by the Fifth Amendment." Miranda, 384 U.S. at 478; Westbrook, 125 F.3d at 1002.

We review de novo a district court's determination whether conversations between the accused and a law enforcement officer constituted "interrogation." Jackson, 189 F.3d at 509. A district court's findings of fact and credibility assessments are reviewed for clear error. Id. The decision to credit the testimony of one witness over another, each of whom has told a "facially plausible story," can almost never be clear error. United States v. Jensen, 169 F.3d 1044, 1046 (7th Cir. 1999).

In denying Briggs's motion to suppress, the district court heard the conflicting testimony of Lt. Story and Briggs and determined that the officer's account was more credible. We defer to the court's credibility determination. Lt. Story's account is not inherently implausible, and facets of his testimony are bolstered by Briggs's own account of their conversation. For example, at the suppression hearing, Briggs stated that he was concerned about Trigg's well-being; this acknowledgment supports Lt. Story's assertion that Briggs spoke up spontaneously in an attempt to clear Trigg of any wrongdoing. In short, Briggs has not pointed us to anything in the record to suggest that the district court committed clear error in crediting Lt. Story's testimony.

Accepting the truthfulness of Lt. Story's account, as did the district court, we conclude that Briggs himself initiated further communication with police by asking Lt. Story what would happen to Trigg. In response to that question, Lt. Story said that he thought both men would be charged with possession of drugs. A police officer's response to a direct inquiry by the defendant does not constitute "interrogation." See United States v. Conley, 156 F.3d 78, 83 (1st Cir. 1998) (no interrogation where police responded after suspect repeatedly asked, "What's this all about?"); United States v. Taylor, 985 F.2d 3, 6-7 (1st Cir. 1993) (no interrogation where police officer responded to suspect's question, "Why is this happening to me?"); United States v. Benton, 996 F.2d 642, 643-44

(3d Cir. 1993) (no interrogation where police responded to suspect's demand to know "what was going on"); United States v. Jackson, 863 F.2d 1168, 1172-73 (4th Cir. 1989) (no interrogation where police officer responded to defendant's inquiry regarding reasons for his arrest); see also United States v. Payne, 954 F.2d 199, 203 (4th Cir. 1992) (no interrogation where police officer's statement "was not one that sought or required a response"). Thus, Lt. Story's statement that he thought Trigg would be charged with the same offense as Briggs did not constitute "interrogation."

Moreover, the only direct question that Lt. Story asked Briggs during this exchange was what Briggs meant when he said he was "going to die." Although direct questioning by a police officer is the most obvious form of improper interrogation, not all direct questions constitute "interrogation." United States v. Foster, 227 F.3d 1096, 1102-03 (9th Cir. 2000). Only questions that are "reasonably likely to elicit an incriminating response from the suspect" are improper. Innis, 446 U.S. at 301-02. A police officer does not interrogate a suspect "simply by hoping that he will incriminate himself." Arizona v. Mauro, 481 U.S. 520, 529 (1987); see also United States v. Barnes, 195 F.3d 1027, 1029 (8th Cir. 1999) (no interrogation where police officer asked accused what he meant when he responded he "didn't think so," when informed he was going to be booked for possession of a firearm). Lt. Story's follow-up question about Briggs's well-being did not relate to Briggs's crime, nor did it seem intended to elicit an incriminating response. See Innis, 446 U.S. at 301; Westbrook, 125 F.3d at 1002. Indeed, if Lt. Story believed Briggs was suicidal, he acted reasonably in inquiring further, since failing to take proper precautions to prevent a prisoner's suicide might subject the state to liability. See Sanville v. McCaughtry, 266 F.3d 724, 733 (7th Cir. 2001).

For these reasons, we agree with the district court that Briggs's statements were voluntary.

AFFIRMED.

FOOTNOTE

/* We granted a motion to waive oral argument in this case, and therefore the appeal is submitted on the briefs and the record.