NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 12, 2007
Decided July 25, 2007

**Before**

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 06-2451 | Appeal from the United States District Court for the |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Northern District of Illinois, Eastern Division. |
| *v.* | No. 04 CR 693 |
| JANUSZ ROBAK, *Defendant-Appellant.* | **Robert W. Gettleman**, *Judge.* |

**O R D E R**

A jury found Janusz Robak guilty of conspiring to distribute Ecstasy in violation of 21 U.S.C. §§ 841(a)(1) and 846, conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h), and perjury in violation of 18 U.S.C. § 1623(a). The offenses stem from Robak's involvement in a large-scale Ecstasy smuggling ring operating across the U.S./Canadian border. On appeal, Robak argues the district court erred by denying his motion to suppress his incriminating statements and by admitting evidence of a border stop at the U.S./Canada border during which he was caught attempting to bring undeclared cigarettes into the United States.

We affirm. Robak freely reinitiated communication with law enforcement officers after initially invoking his right to counsel, and offered the incriminating

statements following an appropriate *Miranda* waiver. The border-stop evidence was admissible to prove his knowledge of border procedures and was not unduly prejudicial.

## I. Background

Officer Zachary McCorkle[1] pulled over the driver of what he believed to be a stolen vehicle for a minor traffic violation in Norridge, Illinois. Robak was driving the car and presented Officer McCorkle with a bogus driver's license identifying him as Daniel Kot. McCorkle took Robak (whom he believed to be Daniel Kot) to the Norridge Police Department for questioning about the car. After asking several booking questions, McCorkle learned Robak's true identity from FBI Special Agent James Swenty, who arrived a short time later to arrest Robak on federal drug charges.

Agent Swenty took Robak into federal custody and read him his *Miranda* rights in English. Unsure if Robak understood—Robak is Polish and speaks his native language—Agent Swenty ceased his questioning until the rights could be given in Polish. At that point he was unsure whether Robak had requested counsel; however, his written report reflected Robak had indeed made the request.

About an hour later, Robak was moved to a Drug Enforcement Administration ("DEA") office where he was met by DEA Task Force Officer Magdalena Garrison, who was unaware of any previous request for counsel by Robak. Garrison greeted Robak by saying "good day" in Polish, and Robak asked why he was in custody. Garrison replied, "because of an issue of stolen cars."[2] Robak then asked, "Can we talk about it?" Garrison said they could but first they had to follow certain procedures. Garrison and the other officer then read Robak his *Miranda* rights in both Polish and English, and Robak initialed each line and signed a waiver of rights form. The form stated: "I have read this statement of my rights, and I understand what my rights are. At this time I am willing to answer questions without a lawyer present." During the ensuing interview, Robak identified photos of individuals and explained what he knew about them, and then admitted transporting money and pills that he believed were steroids to and from Canada. At this time Robak also consented to a search of his Norridge residence. The interview ended when Robak requested an attorney.

Robak initially was charged by indictment with conspiracy to distribute

---

[1] Officer McCorkle serves on the Elgin Police Department and at the time was specially assigned to the Kane County Auto Theft Task Force, a unit with the Illinois State Police.

[2] Coincidentally, Garrison had been at the U.S. Attorney's office helping to prepare a criminal complaint against Robak earlier in the day for unrelated drug charges.

Ecstasy.  He then filed a "Motion to Suppress Statements of Defendant and Physical Evidence Seized from Defendant's Vehicle."  Nine days later, a grand jury returned a superseding indictment charging Robak with: (1) conspiracy to distribute Ecstasy; (2) conspiracy to commit money laundering; (3) lying to the FBI regarding the investigation; and (4) perjury allegedly committed during his detention hearing. The next day Robak filed a "Motion to Bar Evidence of Stops of Defendant by Authorities at the U.S./Canadian Border."  The district court held a hearing and denied Robak's motions.  A jury returned a guilty verdict on all counts except for the third.

## II. Discussion

Robak challenges the district court's denial of his motion to suppress his incriminating statements and his motion to exclude the border-stop evidence.  We address each issue in turn, reviewing the district court's evidentiary ruling for abuse of discretion, *United States v. Thomas*, 453 F.3d 838, 844 (7th Cir. 2006), and the court's findings of fact and credibility determinations on the suppression motion for clear error, *United States v. Jensen*, 169 F.3d 1044, 1046 (7th Cir. 1999).  A district court's "decision to credit the testimony of one witness over another, each of whom has told a 'facially plausible story' can almost never be clear error."  *United States v. Briggs*, 273 F.3d 737, 740 (7th Cir. 2001) (quoting *Jensen*, 169 F.3d at 1046).

## A. Denial of Motion to Suppress

*Miranda v. Arizona*, 384 U.S. 436, 444 (1966), requires that prior to custodial interrogation, a suspect "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."[3]  A suspect may waive these rights "provided the waiver is made voluntarily, knowingly and intelligently.  If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning."  *Id.* at 444-45.

After the right to counsel is invoked, a suspect in custody may "change his mind," making a subsequent interrogation permissible, if "'the . . . [defendant] himself initiates further communication, exchanges, or conversations with the

---

[3]  "Custodial interrogation" means questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

police'" and waives his *Miranda* rights.[4]  *Oregon v. Bradshaw*, 462 U.S. 1039, 1044 (1983) (quoting *Edwards v. Arizona*, 451 U.S. 477, 485 (1981)); *see also United States v. Huerta*, 239 F.3d 865, 873 (7th Cir. 2001) (holding defendant reinitiated communication when she asked why detectives wanted her shoes and then said she wanted to talk).  A suspect is interrogated for purposes of *Miranda* if the officer should know his words or actions "are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *United States v. Westbrook*, 125 F.3d 996, 1002 (7th Cir. 1997) (applying *Innis*, we ask whether a reasonable, objective observer would believe the officer's question was "reasonably likely to elicit" an incriminating response).  Thus, "volunteered statements are not subject to *Miranda* warnings." *Westbrook*, 125 F.3d at 1002.

Here, Robak apparently asked for an attorney during his initial questioning by Agent Swenty.  Swenty ceased his questioning, Robak was moved to a DEA office, and Officer Garrison, a Polish-speaking DEA officer, greeted him in Polish.  Robak then asked Officer Garrison why he was in custody.  When she responded, he asked, "Can we talk about it?"  The district court held that by this line of inquiry, Robak voluntarily reinitiated conversation with the police.  Robak argues that Officer Garrison reinitiated the interrogation when she greeted him in Polish when he arrived at the DEA office.  He also argues that Officer Garrison's incomplete explanation that he was in custody because of stolen cars (with no mention of drugs) is evidence of her intent to elicit incriminating responses from him.

We agree with the district court that a reasonable, objective observer would not believe Garrison's Polish greeting of "good day" to be reasonably likely to elicit incriminating information.  Accordingly, Officer Garrison did not reinitiate the interrogation.  Robak voluntarily resumed communication with law enforcement when he asked Officer Garrison why he was in custody and then further asked to "talk about it" when the officer replied that he was under arrest for "stolen cars." That Officer Garrison omitted any reference to drugs does not undermine the voluntariness of Robak's reinitiation of communication.  Officer Garrison told Robak that before they could "talk about it" they first had to follow procedures; Robak was then read his *Miranda* rights in both Polish and English.  When he signed the waiver, he was fully aware of his rights and voluntarily waived them prior to making the incriminating statements and consenting to the search.  The district court properly denied the suppression motion.

## B. Admission of Border-Stop Evidence

---

[4]  To determine whether a defendant waived his rights in the reinitiation context, courts consider whether the police made threats, promises, or inducements to talk, and whether the defendant was properly advised of and understood his rights and after requesting an attorney simply changed his mind. *Oregon v. Bradshaw*, 462 U.S. 1039, 1046 (1983).

Robak argues that the admission of evidence of his detention at the U.S./Canada border with undeclared cigarettes was unfairly prejudicial because that incident differs substantially from the charged crime of smuggling Ecstasy. Rule 404(b) of the *Federal Rules of Evidence* provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as . . . opportunity, intent, preparation, plan, [or] knowledge . . . ." Other-act evidence is admissible if:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury's finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Burke*, 425 F.3d 400, 410 (7th Cir. 2005) (quoting *United States v. Bursey*, 85 F.3d 293, 296 (7th Cir. 1996)).

On appeal, Robak renews his argument that the first, second, and fourth requirements for the admission of other-act evidence were not met. We disagree. The border-stop evidence was properly admitted to prove Robak's knowledge of U.S./Canada border procedures, a permissible noncharacter purpose under Rule 404(b). The distinction between smuggling cigarettes and Ecstasy is undeniable but does not prompt us to regard the admission of this evidence as an abuse of discretion. Robak suggests that the jury could infer his knowledge of border procedures from his occupation: a truck driver who made deliveries to Canada. This may be true, but it does not call into question the admissibility of the border-stop incident. Robak's prior border detention for undeclared cigarettes was admitted for a permitted noncharacter purpose and was not so dissimilar as to fail the test for admission of other-act evidence.

Moreover, the evidence of Robak's prior act of smuggling cigarettes is not likely to have influenced a jury so much that its prejudicial effect substantially outweighed its probative value. *United States v. Hicks*, 368 F.3d 801, 807 (7th Cir. 2004) ("Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." (internal citations omitted)). The district court gave an appropriate cautionary instruction regarding the purposes for which the border-stop evidence could be considered; "[w]e consistently have explained that such instructions minimize the prejudicial effect of this type of evidence." *United States v. Strong*, 485 F.3d 985, 991 (7th Cir. 2007) (citing *United States v. Whitlow*, 381 F.3d 679, 686 (7th Cir. 2004) & *United States v. Rollins*, 301 F.3d 511, 520 (7th Cir. 2002)).

AFFIRMED.