NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued November 13, 2007
Decided December 26, 2007

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 07-1636

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee,*<br><br>    *v.*<br><br>DAMONE T. ABERNATHY,<br>    *Defendant-Appellant.* | Appeal from the United States<br>District Court for the Northern<br>District of Indiana, Fort Wayne<br>Division<br><br>No. 1:06-CR-3-TLS<br><br>Theresa L. Springmann,<br>*Judge.* |

**O R D E R**

Damone Abernathy was found guilty of possessing crack cocaine with intent to distribute, carrying a firearm during and in relation to a drug trafficking crime, and being a felon in possession of a firearm after a jury trial, and he received a sentence of 175 months' imprisonment. *See* 21 U.S.C. § 841(a)(1); 18 U.S.C. §§ 924(c), 922(g)(1).  Abernathy now challenges the trial court's denial of his motion to suppress the drugs and handgun seized from his car following a traffic stop. Because the district court properly denied the motion, Abernathy's convictions are affirmed.

At approximately 3:00 a.m. on January 5, 2006, Gregory Woods, a police officer with the City of Fort Wayne, Indiana, Police Department, was patrolling an unfamiliar southeastern neighborhood of Fort Wayne. Officer Woods observed a slowly moving car—driven by Abernathy, whose blood alcohol content police would later learn exceeded the legal limit—and decided to follow it. Although the exact route the two cars traveled is not clear from the record, Officer Woods twice witnessed Abernathy fail to activate his turn signal while making a turn, a traffic violation under Indiana law. *See* IND. CODE § 9-21-8-25. Yet Officer Woods at this time decided not to conduct a traffic stop and instead drove in another direction. The two vehicles converged once again a few minutes later. At this time Officer Woods noticed that Abernathy's right brake light was not working, an equipment failure that, when considered with Abernathy's earlier failures to use his turn signal, caused Officer Woods to conduct a traffic stop. Officer Woods activated his emergency lights, and Abernathy refused to pull over. Officer Woods next turned on his siren and advised his dispatcher of the situation as he proceeded to follow Abernathy. After a short chase, Abernathy turned into an alley, jumped from his moving vehicle, and fled the scene. Abernathy's vehicle, missing its driver, came to a stop after colliding with a utility pole.

Upon witnessing Abernathy jump from his vehicle, Officer Woods pulled over and pursued Abernathy on foot. Moments later, David Tinsley, another police officer in the area who learned of the chase, spotted Abernathy and apprehended him. Following Abernathy's arrest, two other officers inventoried Abernathy's vehicle before towing and discovered a handgun and drugs. Meanwhile, Abernathy was taken to a hospital, where he tested positive for a blood alcohol count between .08 and .14.

After being charged in federal court, Abernathy moved to suppress the evidence found in his vehicle on the grounds that he had not committed the alleged traffic violations and thus Officer Woods lacked probable cause to make the stop. Following a hearing on the motion, Abernathy filed a supplemental brief in which he argued that errors and inconsistencies in Officer Woods's testimony at the hearing, his initial report, and his probable cause affidavit—such as failing to accurately recall street names and intersections, incorrectly characterizing left turns as right turns, reporting that there were two bags of drugs when there were actually three (two bags were tied together), and mistakenly testifying that he was the officer who wrote out Abernathy's traffic ticket when in fact he had merely signed it—were so grave that the court should deem Officer Woods entirely unreliable and therefore grant the motion to suppress.

In its order denying the motion to suppress, the district court noted Officer Woods's errors but emphasized that they were not material to his uncontradicted testimony that Abernathy twice failed to use his turn signal and that Abernathy's

right brake light was not functioning. The court observed that at the suppression hearing Officer Woods was "candid, non-evasive, and apologetic" when addressing the inconsistencies between his testimony and his earlier writings. Furthermore, the court reasoned, at the time of the stop Officer Woods was a "floater," patrolling a different area in the jurisdiction than his normal one, and it was understandable that Officer Woods would pay less attention to passing street signs than to Abernathy, whom he was chasing. The court also addressed the difference between the admitted and the alleged errors:

> It is one thing for an officer to make a mistake or miss a detail about a street when testifying in court without a map or when writing a report or affidavit from memory. (Or for that matter, to inaccurately report what drugs another officer found.) It is quite another for an officer to pay so little attention while on patrol that he would mistakenly perceive that he observed a failure to signal or inoperable [sic] brake light when he did not actually see any such thing.

After "observing the demeanor, speech, attitudes, and tone of voice of the witnesses at the hearing, and considering the materiality of the inconsistencies and the totality of circumstances," the court determined that Officer Woods's testimony was more than credible and denied the motion to suppress.

We review a district court's determination of witness credibility, which is a question of fact, for clear error. *United States v. Adamson*, 441 F.3d 513, 519 (7th Cir. 2006). Because a district court, unlike an appellate court, has the opportunity to observe the demeanor and appearance of witnesses—an exercise that is critical to assessing credibility—this court has adopted a "near absolute deference" to the credibility determinations of a district court. *United States v. Williams*, 209 F.3d 940, 943 (7th Cir. 2000); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985) (requiring deference to trial court's credibility determinations (in a civil context) because "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said"); *United States v. Briggs,* 273 F.3d 737, 740 (7th Cir. 2001) (crediting one witness over another "can almost never be clear error"); *United States v. Eddy*, 8 F.3d 577, 582-83 (7th Cir. 1993) (contrasting the appellate court's examination of "the cold pages of an appellate record" with the trial judge's observation of a witness's verbal and nonverbal behavior). Reversal is appropriate only if the reviewing court is "left with the definite and firm conviction that a mistake has been made" such as when a district court has "credited *exceedingly improbable* testimony." *United States v. Bass*, 325 F.3d 847, 850 (7th Cir. 2003) (emphasis added) (citation and quotation marks omitted). This standard does not,

however, contemplate reversals for minor errors and inconsistencies in witness testimony, which do not prevent a district court from finding the witness credible. *See, e.g., United States v. Jensen*, 169 F.3d 1044, 1047-48 (7th Cir. 1999) ("Witnesses are not incredible as a matter of law simply because they have been impeached on trivial, irrelevant matters.").

Officer Woods's mistakes—e.g., incorrectly reciting street names and directions of travel in an unfamiliar neighborhood—are certainly not so severe as to render his sworn, uncontradicted recollection of the traffic violations "exceedingly improbable." *See Bass*, 325 F.3d at 850. As the district court noted, Officer Woods admitted his errors and apologized, yet he never recanted or contradicted his sworn testimony that he witnessed Abernathy commit multiple traffic violations. His testimony on this point was clear and convincing. Furthermore, Abernathy failed to present any evidence to support his position that he did not commit the traffic violations that gave rise to the stop; he rests instead, as he did in the trial court, merely on Officer Woods's reports and testimony. But the trial court took stock of Officer Woods, the nature of his errors, his testimony, his explanation, and his demeanor and found him credible. Because this court is in no better position to determine the credibility of Officer Woods and because the district court did not credit exceedingly improbable testimony, we AFFIRM Abernathy's convictions.