In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2543

United States of America,

Plaintiff-Appellee,

v.

Arriel S. Williams,

Defendant-Appellant.

Appeal from the United States District Court
for the Central District of Illinois.
No. 98-CR-30052--Jeanne E. Scott, Judge.

Argued January 13, 2000--Decided March 28, 2000

Before Posner, Chief Judge, and Bauer and Rovner, Circuit Judges.

Bauer, Circuit Judge.  On February 18, 1998, during a routine traffic stop and search, Arriel Williams was arrested for possession of crack-cocaine. Williams filed a motion to quash the arrest and suppress evidence, which the trial court denied. As a result Williams entered a conditional plea on February 11, 1999 and the court sentenced him to 78 months imprisonment followed by four years supervised release and a $100.00 special assessment. Williams now appeals.

I.  Background
  The district court held an evidentiary hearing on the motion to quash the arrest and suppress the evidence. After listening to Williams and the two arresting officers, the court found the officers' testimony more credible than Williams' and denied his motion.

  Officers' Testimony

  On the evening of February 18, 1998 officer Lewis stopped Williams' vehicle for having very darkly tinted windows and for not having a visible registration sticker on the rear of the vehicle. Officer Russell arrived almost immediately after Lewis stopped Williams. Lewis

approached Williams, asked for his identification and returned to the squad car to verify the information. Meanwhile, officer Russell was talking to the passenger. Russell returned to the squad car and told Lewis that the passenger had recently been the victim of a shooting and was known to carry weapons. He said that the passenger seemed very nervous and had only lowered his window an inch or two to talk and then raised it immediately. When Russell tried to shine his flashlight in the car the passenger completely shut the window preventing him from seeing through the dark tinted windows. Lewis returned to the car and asked Williams if he could search the car. Williams acted nervous and began fidgeting in his seat. He refused to consent to the search. At this point the officers asked Williams and the passenger to get out of the car. Lewis led the passenger to the rear of the vehicle while Russell went to the front of the vehicle with Williams. Lewis asked Williams if he had anything on him he shouldn't and Williams stated "No." Lewis then asked Williams if he could search him and he consented. Russell stated that he heard Williams say "go ahead and check."

Officer Lewis stated that he ran his hands up one of Williams' legs and down the other. When officer Lewis reached between Williams buttocks, he felt a hard object. Lewis stated that, in his experience as a police officer this was a common place to hide contraband. As Lewis was putting on a rubber glove, Williams ran. Lewis ran after him, tackled him and sprayed him with pepper spray in order to put handcuffs on him. Lewis then reached into the back of Williams' pants, under his undershorts and removed a plastic bag from the buttocks area which contained three rocks of crack cocaine. Both officers stated that Williams' pants were never pulled down nor was his buttock area exposed and that no bystanders were around to witness the events.

William's Version

Williams on the other hand testified that the officer asked to search his car and he refused. When he asked "why," Lewis responded that he had nothing better to do. He was then ordered out of the car, asked if he had anything on him he shouldn't, and after he told him no Lewis searched his outer clothing over his objection. At which point Lewis felt the hard object and told Williams he was going to remove it. Williams testified that Lewis told him that if it was "weed" he would let him go. As Lewis was putting a rubber glove on, Williams ran. Lewis tackled him and sprayed pepper spray in his face because

he wouldn't put his hands behind his back. Lewis then pulled down his pants publicly exposing his buttocks and removed the "crack." Williams stated he was on his stomach in the yard of a residence near a street light and passing traffic.

## II.  Analysis

Williams argues that the district court erred when it found the officers' testimony more credible than his own. He contends that he never gave consent to this search and that there were no exigent circumstances present to justify the search under the constitution. The evidence presented at the suppression hearing directly contradicted Williams' assertions that he never consented to the search. Further, the evidence showed that, during the course of the initial search, Williams ran from officer Lewis and not until after the officers tackled and handcuffed him was the "crack" seized.

In reviewing a district judge's ruling on a motion to suppress, this court reviews questions of law de novo and questions of fact for clear error. Ornelas v. United States, 517 U.S. 690, 698 (1996); United States v. Sholola, 124 F.3d 803, 811 (7th Cir. 1997). We have held that "[b]ecause the resolution of a motion to suppress is necessarily fact-specific, we give special deference to the district court that heard the testimony and observed the witnesses at the suppression hearing." Sholola, at 811; United States v. Stribling, 94 F.3d 321, 323 (7th Cir. 1996).

The question in this case is one of consent. Williams does not dispute that probable cause existed for the officers to stop his car for having dark tinted widows and lack of visible registration. Rather, the dispute is whether, following the traffic stop, he consented to officer Lewis' search of him.

Warrantless searches do not violate the Fourth Amendment when the police receive consent. Whether Williams consented to the search was a question of fact for the district court to determine. We review the district court's factual finding for clear error. United States v. Shelby, 121 F.3d 1118, 1120 (7th Cir. 1997); United States v. Yusuff, 96 F.3d 982, 987 (7th Cir. 1996). And, we accord near absolute deference to the district court's credibility determinations. Id.

After listening to both sides, the district court found that the officers' testimony regarding consent to be more credible than Williams'. The officers were justified both in

stopping the car and in ordering Williams and his passenger from the car. Williams consented to the initial search and the subsequent search on the ground which was also justified as a search incident to arrest. The retrieval of the "crack" did not invoke any greater intrusion than would have occurred if the search had been conducted at the police station. Finally, Williams was not subjected to a public viewing.

In credibility cases, such as this, we rely heavily on the district judge's determinations because the judge is in the best position to evaluate a witness' demeanor and tone of voice. United States v. Jensen, 169 F.3d 1044 (7th Cir. 1999). "Under the Supreme Court's formulation in Anderson, we must determine whether the testimony was coherent and plausible, not contradicted by extrinsic evidence, and not internally inconsistent, because a district court's finding that such testimony is credible can virtually never be clear error." Id. at 1046; quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d (1985). Because the district court's findings of consent and credibility were supported by the record and the subsequent seizure of the "crack" was justified as a search incident to arrest, we uphold its determination.

Williams next argues that the "crack" seized from him should be suppressed because it was found when Officer Lewis "strip searched" him at the scene subjecting him to great humility and indignity. The district court, however, construed the search as a search incident to an arrest, not a strip search.

Searches incident to arrests are valid in order to find weapons and to search for and seize any evidence on the arrestee's person in order to prevent concealment and to preserve evidence for trial. United States v. Robinson, 414 U.S. 218, 234 (1973). The Court went on to hold "that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." Id. at 235. The court must "balance the need for the particular search against the invasion of personal rights that the search entails" in determining the reasonableness of a search. Kraushaar v. Flanigan, 45 F.3d 1040, 1045 (7th Cir. 1995) quoting Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id.

The Supreme Court in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1994), stated that a seizure is justified if during a pat-down search of the outer garments, an object "whose contour or mass" is readily identifiable as contraband. The court in United States v. Ashley, 37 F.3d 678 (D.C. Cir. 1994), followed the reasoning in Dickerson to uphold a consent search at a bus station. During a consensual pat-down of the suspect, the officer felt a hard object underneath his pants and asked him to open his pants. Id. at 680. The suspect had on another pair of pants and was asked to open them, at which point the officer removed a protruding bag from his underwear containing crack cocaine. Id. The court took into account the sweeping, patting, motion of the pat-down, the officer's training and experience, and the fact that he immediately identified the object as crack cocaine. Id. Further, the court found that the seizure did not add significantly to the invasion of privacy from the initial pat-down search. Id. at 682.

In this case, Williams initially consented to the pat-down search. The officer in running his hands up Williams' leg felt a hard object between the cheeks of Williams' buttocks, which was readily identifiable to him as contraband. As the officer went to put on a rubber glove, Williams ran. Lewis had to run after him, tackle him and spray him with pepper spray before he could get him under control. Lewis retrieved the object by sliding his hand under Williams' waistband and down the back part of his pants. Williams was never disrobed or exposed to the public. The search occurred at night, away from traffic and neither officer saw anyone in the vicinity. Additionally, Williams' attempt to flee the scene and his physical resistance prior to the retrieval of the substance suggest that he would have tried to further conceal or dispose of the evidence had they not retrieved it immediately.

In this case, the scope of the initial pat-down search by the officers was no more intrusive than that which was already permitted in Dickerson and Robinson. The officers' seizure of the drugs did not add significantly to Williams' invasion of privacy. Based on the officers' experience, the scope of the search, its justification and the place where it occurred, the district court did not clearly err in concluding the search of Williams was not overly intrusive and was correct in denying the motion to suppress. The district court made a credibility determination and we will not interfere with it.

III.  Conclusion

For the foregoing reasons we affirm the

district court's decision.