# United States Court of Appeals
## For the First Circuit

---

No.    04-1053

UNITED STATES OF AMERICA,

Appellee,

v.

EDWARD COFIELD,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert E. Keeton, U.S. District Judge]

---

Before

Lynch, Circuit Judge, Leval,[*] Senior Circuit Judge,
and Lipez, Circuit Judge.

---

John F. Palmer, for appellant.
James F. Lang, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, and Frank M.
Gaziano, Assistant United States Attorney, were on brief, for
appellee.

---

December 10, 2004

---

[*] Of the Second Circuit, sitting by designation.

**LEVAL**, <u>**Senior Circuit Judge**</u>. The defendant Edward Cofield brings this appeal from his conviction in the United States District Court for the District of Massachusetts for possession of heroin in violation of 21 U.S.C. § 844(a), and being a convicted felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g). The defendant moved to suppress evidence seized from him by the Boston police following his arrest. The district court conducted a hearing and denied the motion. The defendant then entered a conditional plea of guilty, preserving his right to appeal from the denial of the suppression motion. Defendant was sentenced to 180 months imprisonment, followed by three years of supervised release on the firearms count, and to concurrent terms of 12 months imprisonment and a year of supervised release on the heroin count. He brought this appeal. We affirm.

**Background**

On the afternoon of June 15, 2001, Officer Kenneth Hearns of the Boston Police Department, a plainclothes narcotics investigator, saw the defendant Cofield on Washington Street in Roxbury. Hearns recognized Cofield, from having arrested him on January 10, 2000 after seeing him chase and attempt to stab another man. When the police officers had overtaken and apprehended Cofield on that prior occasion, they had found a knife on his person and a bundle of thirteen bags of heroin on the ground next to him. Cofield had been charged with heroin possession and armed

assault. Hearns knew that Cofield had failed to make a court appearance on that charge and was wanted as a fugitive. He confirmed by police radio that there was a warrant outstanding for Cofield's arrest and made contact with backup. He was joined by Officers Jay Broderick and Michael Ross to assist in the arrest. The officers approached Cofield and told him he was under arrest. Cofield struggled to free himself from the officers' grasp, but was soon handcuffed. Officer Broderick quickly frisked Cofield's pockets and found a glassine bag containing heroin.

While they waited for a police car to transport Cofield to the nearby precinct, the officers noticed that Cofield was acting nervous and "high-strung." Cofield said to Hearns, "If I ran right now, would you be mad at me?" The officers decided to search Cofield once he had been transported to the station house. Among their reasons for not searching him more fully on the street was the desire to avoid calling attention to themselves and compromising their undercover roles. Approximately ten minutes after arrival at the station house, Hearns undertook to search Cofield. The search was conducted in a hallway near the booking desk. There were no other people under arrest there at the time.

Hearns began to search Cofield's hat and shoes without finding anything. He then asked Cofield to open his denim shorts. Cofield turned to face the wall and dropped his shorts. Hearns then told him to take his underwear down. Cofield took his underwear down

slowly and carefully, using two hands. Hearns, observing from behind, saw a dark object sticking out from the underpants. As Cofield lowered his underpants slowly, a .32 caliber Beretta pistol fell out. Cofield kicked it under his denim shorts. The police quickly recovered it. The present prosecution was based on Cofield's possession of the heroin, the pistol, and the ammunition.

Cofield's motion to suppress was based on the argument that the officers lacked the necessary degree of probable cause, reasonable suspicion or concern for their safety that would justify a strip search. After holding an evidentiary hearing, the district court denied the motion on the grounds that (1) the circumstances supported a reasonable suspicion that Cofield was in possession of weapons and/or narcotics, and (2) the officers had good reason to fear for their safety. The court may also have relied on inevitable discovery. This doctrine was discussed during argument, but was not expressly relied on in the court's final summary of its ruling.

**Discussion**

The lawfulness of a strip search depends on whether the circumstances reasonably justify such an intrusive invasion of privacy. Bell v. Wolfish, 441 U.S. 520, 559 (1979); Swain v. Spinney, 117 F.3d 1, 5-6 (1st Cir. 1997). Appellate review is de novo. See, e.g., United States v. Sargent, 319 F.3d 4, 8 (1st Cir. 2003). In considering the question of reasonableness, a court must

assess the totality of the circumstances, including "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell, 441 U.S. at 559. The inquiry is of a practical nature, calling for a sensible assessment of the circumstances. Well-justified concern for the safety of police officers can of course furnish important justification.

The police officers had excellent reason to believe that Cofield might be in possession of both weapons and narcotics, and that he might pose a threat to their safety.[1] There was also good reason to believe such things might be hidden in his underwear. Among the circumstances which supported such a concern were the following: Officer Hearns knew Cofield to be a narcotics dealer;

---

[1] Without suggesting that there were not reasonable grounds to search based on possible possession of narcotics, we also consider the threat to officer safety. We recognize that Officer Hearns testified that the motivation of his search was to find narcotics. Nonetheless, if an objective assessment of the circumstances would have justified a concern about a concealed weapon, a court properly takes that concern into account in determining the reasonableness of the search, even though it was not the searching officer's motivation. See, e.g., Whren v. United States, 517 U.S. 806, 813-14 (1996) (finding that the Supreme Court's "cases foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved" and stating that "the Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent"); United States v. Weems, 322 F.3d 18, 23-24 (1st Cir. 2003) ("[T]he subjective intent of the police plays no role in the analysis of a motion to suppress under the Fourth Amendment. . . . Rather, the question is whether [the search was] objectively reasonable under the Fourth Amendment.").

officers had found a glassine baggie of heroin in Cofield's exterior pocket, suggesting a likelihood that he may have more heroin on his person; from his own personal experience, as well as his professional familiarity with narcotics traffic, Officer Hearns knew that narcotics dealers often carry narcotics and weapons concealed in their undershorts;[2] and Cofield had appeared tense and nervous and had struggled to avoid arrest. Furthermore, the previous year Hearns had seen Cofield try to stab a man and had found Cofield to be in possession of thirteen bags of heroin. All these circumstances supported a reasonable inference that Cofield might well be concealing a weapon, posing a danger to the police and others, as well as contraband narcotics evidence, which Cofield might find a way to hide or dispose of if it was not promptly secured.

Bell also requires consideration of the manner in which the search is conducted, with attention to whether it exceeds reasonable bounds or is done in a needlessly humiliating fashion or with improper motivation. See Roberts v. Rhode Island, 239 F.3d 107, 113 (1st Cir. 2001); Swain, 117 F.3d at 8. In the present case, the strip search was conducted in a professional manner with no more intrusion than necessary to accomplish the proper law

_____

[2] This court has observed in discussing the reasonableness of a strip search that "[i]t is common knowledge that controlled substances often are concealed on the person of users and dealers alike." Burns v. Loranger, 907 F.2d 233, 238-39 (1st Cir. 1990).

enforcement purpose. The officers did not require Cofield to assume humiliating poses, expose himself in an unnecessarily public place or to members of the opposite sex, remain exposed for unreasonable durations, or endure degradation or ridicule. Nor was there any suggestion of any abusive or unprofessional motivation on the part of the officers. Compare Swain, 117 F.3d at 8 ("distinct possibility" that strip search was ordered to "impos[e] sexual humiliation . . . as a punishment for . . . non-cooperation"), *with* Wood v. Hancock County Sheriff's Dep't, 354 F.3d 57, 69 (1st Cir. 2003) (noting appellant did not challenge manner of search where "done in a private area, by a single officer of the same gender, and without physical contact"); Roberts, 239 F.3d at 113 (manner of search reasonable where conducted in private, search was entirely visual, and no accusations of abuse); Burns v. Loranger, 907 F.2d 233, 235 & n.6 (1st Cir. 1990) (noting plaintiff did not challenge manner of strip search, where visual search only, performed by officer of same gender, and in a private location).

Nor was the strip search unreasonable in relation to the nature and seriousness of the offenses in which Cofield was believed to be involved. Cofield was a fugitive on the serious charges on which Hearns had first arrested him in January 2000. He was now subject to prosecution for the earlier assault and heroin offenses, his flight to avoid that prosecution, and the new heroin discovered through the Washington Street pat-down. See Roberts,

239 F.3d at 112 (more latitude to strip search prisoners charged with offenses "generally associated with weapons or contraband"); see also Miller v. Kennebec County, 219 F.3d 8, 12 (1st Cir. 2000) (agreeing with district court that there was ample evidence to find strip searches unjustified, "particularly" because offense for which plaintiff was detained gave rise to no suspicion of concealment of weapons or contraband).

Considering all these circumstances, we believe that the district court was eminently justified in concluding that the search was reasonably conducted and well within the standards of Bell.[3]

**Affirmed.**

---

[3] Because we affirm on the basis of the reasonableness of the search, we have no need to rule on the alternate ground of the inevitability of the gun's discovery. See, e.g., Nix v. Williams, 467 U.S. 431 (1984) (applying the doctrine of inevitable discovery to admit evidence); United States v. Scott, 270 F.3d 30, 42-45 (1st Cir. 2001) (same); United States v. Ford, 22 F.3d 374, 377-81 (1st Cir. 1994) (same); United States v. Silvestri, 787 F.2d 736 (1st Cir. 1986) (same).