In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-1237

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TERRILL T. THOMAS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 06 CR 10010—**Joe Billy McDade**, *Judge.*

ARGUED DECEMBER 3, 2007—DECIDED JANUARY 7, 2008

Before BAUER, EVANS, and SYKES, *Circuit Judges.*

BAUER, *Circuit Judge.* Defendant-Appellant Terrill Thomas was under investigation by the Peoria police in late 2005 for dealing heroin; on December 28, 2005, they pulled over a van in which Thomas was a passenger. After a struggle, Thomas was placed under arrest. A search of Thomas produced an aluminum foil packet, currency, and a handgun. A golf ball-sized ball of crack cocaine and heroin was found between Thomas's buttocks.

Thomas was charged in a four-count indictment for (1) possession with intent to deliver more than five grams of crack, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count 1); (2) possession with intent to deliver

more than five grams of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count 2); (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 3); and (4) felon-in-possession of a firearm, in violation of 18 U.S.C. § 922(g) (Count 4).

Thomas filed a motion to suppress the evidence of the search and the statements he made to the officers after his arrest. The district court held an evidentiary hearing, and on September 13, 2006, denied the motion in a written opinion. Thomas then entered a conditional plea of guilty to Counts 1 and 3, reserving the right to appeal the denial of the motion to suppress. On January 26, 2007, the district court sentenced him to a total of 180 months' imprisonment. Thomas timely filed a notice of appeal on February 1, 2007.

Thomas challenges the denial of his motion to suppress on three grounds: (1) the officer did not have reasonable suspicion to perform a pat-down search during the traffic stop; (2) the officer subjected him to an unreasonable "body cavity" search; and (3) his statements after his arrest were not sufficiently attenuated from the taint of the illegal search.

We review a district court's legal conclusions on a motion to suppress *de novo* and factual findings for clear error. *United States v. Riley*, 493 F.3d 803, 808 (7th Cir. 2007). We generally defer to the district court's determination of credibility because, unlike our review of transcripts, the district court had the opportunity to listen to the testimony and observe the demeanor of witnesses. *United States v. Biggs*, 491 F.3d 616, 621 (7th Cir. 2007). Because we find that the officers were justified in performing the pat-down search, which was reasonable and proper, we do not address Thomas's third argument about the statements he made to officers after his arrest.

The suppression hearing brought out the following facts: Between October and December of 2005, Thomas was the subject of an ongoing police investigation in which Thomas was suspected of being a heroin dealer, based in part on information from a confidential informant. As part of the investigation, Peoria police made two controlled buys of heroin that involved Thomas. Officer Loren Marion, a member of the Special Investigations Division Vice Narcotics Unit in the Peoria police department, was present for one of those buys. The police also learned that Thomas had been dealing drugs out of a blue and tan conversion van with a certain license plate number, and that there was a possibility that Thomas carried a handgun when he made drug deliveries.

Officer Marion was on duty in an unmarked car on the evening of December 28, 2005. Around 8:30 p.m., he observed a van matching the description and license plate of the van associated with Thomas's drug trafficking. Officer Marion requested over the police radio that a marked police car stop the van. He followed the van until Officer Aaron Watkins, who was on patrol in the area, initiated the stop on the basis that the van's rear registration light was out. The van pulled over in front of a high school.

Officer Watkins approached the van from the driver's side and began questioning the driver, Danita Murray, who happened to be Thomas's wife. Officer Marion approached from the passenger side and used his flashlight to look inside the van through the front passenger window. He observed Thomas, who was looking in the direction of his wife, reach briefly into his left jacket pocket with his right hand, without removing anything. Officer Marion tapped on the window and asked Thomas to exit the van. Officer Marion testified that he was concerned, based on prior information, that Thomas was armed and wanted to conduct a pat-down search

for weapons. Thomas initially refused, asking "why he had to get out." Officer Marion observed that Thomas was shaking and sweating. He asked Thomas to get out of the vehicle two more times before Thomas complied. When Thomas got out, he began to walk between Officer Marion and the van door, in a seeming attempt to get away from the officer. Officer Marion grabbed Thomas's right arm.[1] Officer Marion, along with Officer Thomas Rusk, who had arrived moments before to assist, testified that a struggle ensued while they attempted to handcuff Thomas. Thomas continued to resist, and Officer Marion told Thomas that he would be tasered if he did not stop struggling. Thomas stopped struggling, and Officer Marion arrested him for resisting arrest.

Pursuant to the arrest, Officer Marion conducted an initial pat-down search of Thomas, and found an aluminum foil packet (similar to heroin packaging), currency, and a handgun in his waistband. When he discovered the handgun, Officer Marion walked with Thomas to his unmarked car, where the officer secured the gun. Officer Marion then walked Thomas over to Officer Rusk's car to resume the pat-down search. As Officer Marion continued to pat-down Thomas's outer clothes, he felt a bulge between Thomas's buttocks. Officer Marion testified that, based on his experience as a narcotics officer, it was common for individuals to hide drugs between their buttocks. Officer Marion put on a pair of rubber gloves, inserted his hand inside Thomas's pants and underwear, and retrieved a golf ball-sized ball of crack cocaine and heroin from between Thomas's buttocks. Officer Marion testified that he may have "loosened"

---

[1] The district court noted that there was conflicting testimony as to whether Thomas exited the van unassisted or whether Officer Marion grabbed Thomas's jacket and pulled him out.

Thomas's belt but he did not remove Thomas's belt or his pants, nor did he insert his finger into Thomas's body cavity to remove the drugs. Thomas was then taken to the police station, where he made incriminating statements to the officers.

Thomas and Murray also testified at the suppression hearing. According to Murray, she was driving the van with Thomas in the passenger seat, when she was pulled over and told by the officer that her rear registration light was out. She heard the other officers order Thomas out, and saw the officers pull him from the van. Murray testified that she did not hear or see any struggle between Thomas and the officers. Some time later, she saw a handcuffed Thomas standing at a squad car behind the car in which she was sitting, and according to Murray, Thomas's pants were down between his buttocks and his knees.

Thomas testified that Officer Marion told him to get out of the car twice, and when Thomas asked for a reason, the officer opened the door, grabbed Thomas, and pulled him out of the car. According to Thomas, although he may have "tensed up" when the officers grabbed him, he did not struggle. Thomas testified that during the pat-down search, Officer Marion felt his genital area, then stood behind Thomas and pulled his pants down to his knees. Thomas said Officer Marion then reached into Thomas's underwear, inserted the tip of his finger into Thomas's anus, and pulled an item from between his buttocks.

The district court denied the motion to suppress. The court found that Officer Marion properly had Thomas leave the van to conduct a pat-down search under *Terry v. Ohio*, based on his knowledge of Thomas's drug trafficking activities and the possibility that Thomas might be armed. The court also found that Thomas attempted to

walk away from Officer Marion when he finally got out of the van, and that a struggle took place between the officers and Thomas, leading to Thomas being cuffed and arrested for resisting arrest. This arrest authorized Officer Marion to conduct the search incident to arrest. Moreover, the court did not believe Thomas's version of the pat-down search that the officer inserted his finger into Thomas's anus. Rather, the court found that Officer Marion conducted a pat-down of Thomas's outer clothing, felt a bulge between Thomas's buttocks, "then inserted his hand inside [Thomas's] pants and his underwear and retrieved a golf-ball-sized ball of crack cocaine and heroin from between [his] buttocks."

It is important to note that, on this appeal, Thomas does not challenge the legality of the traffic stop, conceding in his brief that "the police had sufficient reason to stop the van for the traffic violation." Moreover, Thomas agrees that, "[b]ecause of the stop, officers could have ordered Mr. Thomas out of the car."

Because we find that Thomas was searched pursuant to a lawful arrest for resisting arrest, it is irrelevant whether the pat-down search was justified under *Terry*. Searches incident to arrests are valid in order to find weapons and to search for and seize any evidence on the arrestee's person in order to prevent concealment and to preserve evidence for trial. *United States v. Williams*, 209 F.3d 940, 943 (7th Cir. 2000) (citing *United States v. Robinson*, 414 U.S. 218, 234 (1973)). Where there is a lawful custodial arrest, a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a reasonable search under that Amendment. *Id.* The district court credited the officers' testimony when it found that Thomas's "refusal to exit the van in compliance with Officer Marion's directions . . . leading to [Thomas's] cuffing and arrest would authorize the ensuing search of [Thomas] pursuant to

his arrest for 'resisting' a police officer." The record supports the contention that Thomas resisted the officers' efforts to detain and cuff him. Thomas's struggle with the officers gave them probable cause to arrest him, thus authorizing Officer Marion to conduct a pat-down search pursuant to his arrest.

Nevertheless, we shall address the district court's alternative holding that Officer Marion was acting legally when he conducted a pat-down search of Thomas under *Terry v. Ohio*. Thomas argues that Officer Marion lacked sufficient evidence to establish reasonable suspicion to perform a pat-down search under *Terry*. Thomas further contends that the information supplied by the confidential informant was insufficient, in that the informant did not provide information about a particular drug delivery, or a specific time and place a delivery was to occur. Thomas gives us no reason to question the integrity or reliability of the confidential informant, nor did he object to the testimony regarding the information that the police had acquired during the investigation of Thomas. "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability." *United States v. Rucker*, 138 F.3d 697, 700 (7th Cir. 1998) (citing *Adams v. Williams*, 407 U.S. 143, 147 (1972)). Moreover, the police had been conducting an investigation for two months prior to Thomas's arrest, verifying information about Thomas's drug activities and participating in buys where Thomas was present.

During a *Terry* stop, a police officer may conduct a pat-down search for weapons if the officer has specific and articulable facts that support a suspicion that the individual could be armed or presents a threat or danger to the officer or others. *Terry v. Ohio*, 392 U.S. 1, 27 (1968*); United States v. Shoals*, 478 F.3d 850, 853 (7th Cir. 2007). Furthermore, a police officer may take reasonable

measures to determine whether a suspect is armed "[w]hen the officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." *Terry,* 392 U.S. at 24. The officer need not be certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others might be in danger. *United States v. Bernal*, 28 F.3d 630, 632 (7th Cir. 1994) (citing *Terry*, 392 U.S. at 27).

Officer Marion could point to reasonable and articulable facts to justify a pat-down search of Thomas under *Terry*, and Officer Marion was aware of the possibility that Thomas carried a weapon during his drug deliveries. That suspicion was heightened when, as Officer Marion approached the van, he observed Thomas reach in and out of his jacket pocket, a movement that could be interpreted by an officer as a retrieval of a weapon. Officer Marion's suspicions were reasonable in light of the totality of the circumstances, thus satisfying *Terry*.

Next, Thomas argues that Officer Marion's pat-down "search of his anus in front of [the high school] on a lit, residential street, as his wife watched, was unreasonable." Thomas equates the pat-down to an invasive and demeaning body cavity search, compounded by the fact that it was performed in a public place. The short answer to this is that the court rejected this testimony and we respect that credibility finding.

The court credited the testimony of Officer Marion, who testified that he ran his hands along Thomas's outer clothing when he felt a hard object between Thomas's buttocks. Officer Marion believed this object to be drugs, based on his experience that individuals commonly conceal drugs between their buttocks. Officer Marion put on rubber gloves and retrieved the object. The record does not

support, and the district court declined to accept, Thomas's version of the event. We find no clear error in the facts determined by the district court: that Thomas was never forced to take off his pants, and that the search was not invasive, but rather, was reasonable and justified, especially in light of Officer Marion's previous discovery of drugs and a weapon on Thomas's person. We find that the pat-down search incident to arrest was reasonable in scope, manner and justification.

Finally, Thomas contends that his statements at the police station should be suppressed because they were not sufficiently attenuated from the original taint of the illegal search. In finding the pat-down search of Thomas was reasonable and proper, we decline to address this argument.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

                         _____
                         *Clerk of the United States Court of Appeals for the Seventh Circuit*