Affirmed and Memorandum Opinion filed November 18, 2008








 

Affirmed
and Memorandum Opinion filed November 18, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00825-CR

____________

 

TRULA JEMELKA SALAZAR, Appellant

 

v.

 

THE STATE OF TEXAS, Appellee

 

 



 

On Appeal from the
174th District Court

Harris County,
Texas

Trial Court Cause
no. 1113774

 



 

M E M O R
A N D U M  O P I N I O N

Appellant,
Trula Jemelka Salazar, was charged with possession of between one and four
grams of cocaine, a controlled substance.  See Tex. Health &
Safety Code Ann. '' 481.115(c), 481.102(3) (Vernon 2003).  Contending that
evidence was obtained through unconstitutional searches of her person and her
home, she filed a motion to suppress that was denied.  Appellant then entered
into a plea bargain, but was granted permission to appeal the trial court=s ruling.  In two points of error,
she contends the trial court abused its discretion in denying her motion to
suppress.  We affirm.








                                                               BACKGROUND

On April
23, 2007, two Houston Police Department narcotics officers, who were conducting
surveillance on appellant=s house, saw appellant drive to a nearby apartment complex
and engage in an apparent drug transaction.  She returned to her house, then
left again forty-five minutes later.  Appellant was then seen making a left
turn without signaling, prompting the officersCwho were in an unmarked carCto request that a patrol car conduct
a traffic stop.  Appellant=s car was stopped and, after she was unable to provide proof
of financial responsibility, she was arrested for traffic violations. 
Appellant claims that she was frisked once by a male officer and twice by a
female officer, who discovered an object that was concealed inside appellant=s clothing.  The female officer
escorted appellant to the empty restroom of a nearby Subway restaurant where,
appellant contends, she was strip-searched.  During the search, cocaine was
discovered under appellant=s bra.

Officer
Hernandez, one of the narcotics officers, testified that appellant was advised
of, but chose to waive, her Miranda rights.  She then agreed, orally and
in writing, to permit the search of her house.  She secured her pit-bull dogs,
advised the officers that the house contained guns, and suggested that cocaine
could be found in her bedroom closet.  Following the discovery of more cocaine,
appellant was charged with the third-degree felony of possessing between one
and four grams of cocaine.  She moved to suppress the results of the two
searches, however, contending that (1) the search of her person was constitutionally
unreasonable, and (2) she did not voluntarily consent to the search of her
home.

After
hearing testimony from Officer Hernandez and from appellant, the trial court
denied the motion to suppress.  Pursuant to a plea agreement, appellant pled Aguilty@ to the charged offense and was
sentenced to three years of deferred adjudication and payment of a fine.  She
now appeals the trial court=s denial of her motion to suppress.

 








                                                       STANDARD
OF REVIEW

We
employ a bifurcated standard of review in considering a trial court=s ruling on a motion to suppress
evidence.  Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App.
2000);  Turner v. State, 252 S.W.3d 571, 576 (Tex. App.CHouston [14th Dist.] 2008, pet. ref=d).  We defer almost entirely to the
trial court=s findings of historical fact that are supported by the record,
especially when the findings relate to an evaluation of credibility and
demeanor.  Turner, 252 S.W.3d at 576 (citing Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997)).  We afford the same level of deference
to rulings on mixed questions of law and fact if the resolution of those issues
turns upon an evaluation of credibility and demeanor.  See Guzman, 955
S.W.2d at 89.  However, we review de novo the trial court=s application of the law of search
and seizure.  Carmouche, 10 S.W.3d at 327.

At a
suppression hearing, the trial court is the exclusive trier of fact and judge
of the credibility of the witnesses and the weight to be given their
testimony.  Mason v. State, 116 S.W.3d 248, 256 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d).  Thus, the trial judge may freely
believe or disbelieve all or part of a witness=s testimony, even if the testimony is
uncontroverted.  State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App.
2000); Marsh v. State, 140 S.W.3d 901, 905 (Tex. App.CHouston [14th Dist.] 2004, pet. ref=d).  Accordingly, we must view the
evidence in the light most favorable to the trial court=s ruling.  State v. Kelly, 204
S.W.3d 808, 818 (Tex. Crim. App. 2006); Rothstein v. State, ___ S.W.3d
___, 2008 WL 2986396, at *3 (Tex. App.CHouston [14th Dist.] July 31, 2008,
no pet.).  We will imply omitted findings of fact in favor of the trial court=s ruling if the evidence supports the
implied findings.  See Gutierrez v. State, 221 S.W.3d 680, 687 (Tex.
Crim. App. 2007).  We sustain the trial court=s decision if it is reasonably
supported by the record and is correct under any legal theory applicable to the
case.  Ross, 32 S.W.3d at 855B56.

 








                                   REASONABLENESS
OF PERSONAL SEARCH

In her
first point of error, appellant argues she was subjected to an unreasonable
search following her traffic arrest, in violation of the Fourth Amendment to
the United States Constitution.  The Fourth Amendment protects individuals, Ain their persons, houses, papers, and
effects, against unreasonable searches and seizures@ made without probable cause.  U.S.
Const. amend. IV.  The Texas Constitution affords similar, albeit not
identical, protection.  See Tex. Const. art. I, ' 9; Heitman v. State, 815
S.W.2d 681, 690 (Tex. Crim. App. 1991) (A[W]e now expressly conclude that this
Court, when analyzing and interpreting Art. I, ' 9, Tex. Const., will not be bound by
Supreme Court decisions addressing the comparable Fourth Amendment issue.@).[1]








A traffic stop constitutes a Fourth
Amendment seizure.  See Berkemer v. McCarty, 468 U.S. 420, 439 (1984). 
To be constitutionally permissible, then, a traffic stop must be reasonable.  See
Powell v. State, 5 S.W.3d 369, 375 (Tex. App.CTexarkana 1999, pet. ref=d), cert. denied, 529 U.S.
1116 (2000); U.S. Const. amend. IV.  Generally, a warrantless search of a
person, like appellant, is considered to be per se unreasonable and
therefore disallowed by the Fourth Amendment.  See McGee v. State, 105
S.W.3d 609, 615 (Tex. Crim. App. 2003).  However, this presumption of
unreasonableness may be overcome if the State can show that the search falls
within a few specifically defined and well delineated exceptions.  See id.
(citing Minnesota v. Dickerson, 508 U.S. 366, 372 (1993)).  For example,
it is well settled that no warrant is required to conduct a search incident to
a lawful arrest.  See United States v. Robinson, 414 U.S. 218, 224
(1973).  A lawful arrest permits officers to prevent the concealment or
destruction of evidence by searching a defendant and the areas within the
defendant=s immediate control:

A custodial arrest of a suspect based on probable
cause is a reasonable intrusion under the Fourth Amendment; that intrusion
being lawful, a search incident to the arrest requires no additional
justification.  It is the fact of the lawful arrest which establishes the
authority to search, and we hold that in the case of a lawful custodial arrest
a full search of the person is not only an exception to the warrant requirement
of the Fourth Amendment, but is also a >reasonable= search under that Amendment.

 

Id. at 235; see McGee, 105
S.W.3d at 615 (citing Chimel v. California, 395 U.S. 752, 762B63 (1969)).








Appellant
concedes she properly could be arrested for her admitted traffic violations,
and she acknowledges that the facts of this case therefore fall within the Aincident to lawful arrest@ exception.  In fact, warrantless
arrests are permissible for Aany offense@ committed in the peace officer=s presence or within his view,
including most traffic violations.[2]  See Tex.
Code Crim. Proc. art. 14.01(b) (Vernon 2005); Tex. Transp. Code Ann. ' 543.001 (Vernon 1999).  Officer
Hernandez offered unchallenged testimony that appellant violated traffic laws
by failing to signal before turning left.  See id. ' 545.104(a); Villareal v. State,
116 S.W.3d 74, 81B82 (Tex. App.CHouston [14th Dist.] 2001, no pet.); Dogay v. State,
101 S.W.3d 614, 618 (Tex. App.CHouston [1st Dist.] 2003, no pet.).  Having observed a
violation, he called for a patrol officer to initiate the traffic stop.  See
Turner v. State, 261 S.W.3d 129, 133 (Tex. App.CSan Antonio 2008, no pet.); Muggley
v. State, 473 S.W.2d 470, 472 (Tex. Crim. App. 1971).  According to
appellant, the patrol officer told her she was under arrest for speeding, which
she denies, and for failing to demonstrate proof of financial responsibility,
which she admits.  See Vela v. State, 871 S.W.2d 815, 818B19 (Tex. App.CHouston [14th Dist.] 1994, no pet.)
(approving of arrest for lack of liability insurance); Tex. Transp. Code Ann. '' 601.051, 601.053 (Vernon 1999).

Appellant
concedes that her lawful arrest permitted the officers to fully search her
person.  See Robinson, 414 U.S. at 235.  However, she notes that Robinson
did not dispense with the requirement that all searches, including those
which accompany a lawful arrest, be reasonable.  McGee, 105 S.W.3d at
615.  Thus, a search that was justified and reasonable at its inception
nevertheless may violate the Fourth Amendment if it involves excessive
intensity and scope.  See Davis v. State, 947 S.W.2d 240, 243 (Tex.
Crim. App. 1997).  Appellant insists that her case belongs in this category. 
She complains that, although her arrest involved only minor traffic
violations, she was improperly subjected to an excessive and unreasonable
search consisting of multiple pat-downs and an eventual Astrip search.@

In
deciding whether the search was reasonable, we must balance the need for the
particular search against the invasion of appellant=s personal rights that was occasioned
thereby.  See Bell v. Wolfish, 441 U.S. 520, 559 (1979).  Our analysis
focuses on the particular facts and circumstances of this case.  See McGee,
105 S.W.3d at 616.  We consider such factors as the scope of the particular
intrusion, the justification for initiating it, and the manner and location in
which it was conducted.  See id.  No one factor is necessarily
outcome-determinative.  See id.

A.        Scope of Intrusion








Appellant
testified that a female officer accompanied her to the restroom of a Subway
restaurant, searched appellant=s underwear, and instructed appellant to unfasten and remove
her bra.  The parties dispute whether this uncontroverted testimony amounts to
a Astrip search,@ which has been described as one of
the Amore intrusive searches@ and which is trumped only by Avisual body-cavity searches@ and Amanual body-cavity searches.@  See McGee, 105 S.W.3d at
615.  The term Astrip search@ is commonly employed as an Aumbrella term@ to refer to all inspections of naked
individuals.  See N.G. v. Connecticut, 382 F.3d 225, 228 n.4 (2d Cir.
2004); McGee, 105 S.W.3d at 615.  The State argues that, because
appellant was not completely naked, she was not strip-searched.

We hold
that the facts and circumstances justified the search that was performed on
appellant; therefore, we need not decide whether a partial removal of clothing
constitutes a Astrip search.@  See Amaechi v. West, 237 F.3d 356, 363 (4th Cir.
2001) (surveying federal case law concerning examples of strip searches); see
also United States v. Williams, 209 F.3d 940, 943 (7th Cir. 2000) (noting
that the trial court construed a search similar to that involved in the case sub
judice as Aa search incident to an arrest, not a strip search@).   Because no one factor is
determinative, appellant=s assertion that she was subjected to an intrusive search
does not end our analysis.  See McGee, 105 S.W.3d at 616.  Rather, we
must determine whether the legitimate interests of law enforcement outweigh the
relative intrusiveness of the search.  See id.

B.        Justification for Search

Having
conceded that she was lawfully arrested, appellant nonetheless contends that it
was unreasonable for officers to strip-search her after a minor traffic
violation.  However, she acknowledges that a traffic arrest can be a
permissible pretext for a narcotics search.  See Whren v. United States,
517 U.S. 806, 812B13 (1996) (A[A] traffic-violation arrest (of the sort here) would not be
rendered invalid by the fact that it was >a mere pretext for a narcotics
search[.]=@); Garcia v. State, 827 S.W.2d 937, 944B45 (Tex. Crim. App. 1992).[3] 
In fact, appellant=s house had been under surveillance for suspected narcotics
activity.  Appellant was then observed by Officer HernandezCan experienced narcotics investigatorCengaging in Asome kind of transaction consistent
with drug deals.@  








After
appellant was lawfully arrested, a female officer performed a pat-down and Afelt an object around [appellant=s] breast area.@[4]  One of the purposes of the Asearch-incident-to-arrest@ exception is to permit officers to
prevent the concealment or destruction of evidence.  See Robinson, 414
U.S. at 226 (citing Chimel, 395 U.S. at 763).  In light of the facts
surrounding appellant=s arrest and the discovery of a concealed lump inside
appellant=s clothing, we hold that law-enforcement officers were justified in
conducting a reasonable search to determine the nature of the concealed
object.  See United States v. Thomas, 512 F.3d 383, 387 (7th Cir. 2008);
United States v. Davis, 457 F.3d 817, 823 (8th Cir. 2006); United States
v. Williams, 209 F.3d 940, 944 (7th Cir. 2000).  A person may not avoid a
reasonable search simply because she chooses to hide contraband in a
potentially embarrassing location.  See, e.g., Williams, 209 F.3d at 943B44.

C.        Manner
and Location in which Search was Conducted

A strip
search should be conducted in an area as removed from public view as can be 
provided without compromising legitimate security concerns.  See Richmond v.
City of Brooklyn Ctr., 490 F.3d 1002, 1008 (8th Cir. 2007).  In addition,
it should be performed by an officer of the same gender as the person to be
searched.  See id.  Finally, an intrusive search, like a strip search,
should be conducted in a hygienic manner and not in a degrading, humiliating,
or abusive fashion.  See id.; Bell, 441 U.S. at 560.








Appellant
complains that her search occurred in a Apublic place,@ that is, the restroom of a Subway
restaurant.  That the location may be classified as public, however,
does not mean that appellant was exposed to public view.  See, e.g.,
United States v. Cofield, 391 F.3d 334, 336B37 (1st Cir. 2004) (approving strip
search in hallway near police booking desk where defendant was not exposed Ain an unnecessarily public place or
to members of the opposite sex@); Roberts v. Rhode Island, 239 F.3d 107, 113 n.7 (1st
Cir. 2001) (approving strip search Aconducted in a private area, away
from public view@).  The key consideration is Awhether the officer sought to protect
the privacy interests of the individual by conducting the search in a private
area.@  See McGee, 105 S.W.3d at
617.  Apart from appellant and the female officer who conducted the search, the
Subway restroom was vacant.  To the extent possible, then, the searching
officer protected appellant=s privacy interests by conducting the search privately, and
away from public view.[5]  See id. 
In addition, although the restroom of a public restaurant may not enjoy
hospital-like sterility, a less sterile environment may be acceptable where, as
here, the search does not involve penetration of the body.  See id.
(holding that search which occurred in non-sterile fire station was
reasonable).

Appellant concedes that her search
was non-violent, and she does not contend the search was conducted in a
degrading, humiliating, or abusive manner.  Rather, the search appears to have
been performed in a professional manner with no more intrusion than was
necessary to secure contraband discovered during the female officer=s pat-down.  See Cofield, 391
F.3d at 337.  Appellant=s search does not resemble those that have been found to
involve abuse or humiliation, such as the following:








$          The use of Ainsultingly
suggestive remarks and banal but terrifying expressions of aggression like
those of guards threatening [naked defendants].@  United States ex rel. Wolfish v. Levi, 439 F. Supp. 114, 147
(S.D.N.Y. 1977), rev=d on
other grounds, Bell v. Wolfish,
441 U.S. 520 (1979).

$          The drawing of blood by non-medical personnel or in a
non-medical environment, which would Ainvite
an unjustified element of personal risk of infection and pain.@  Schmerber v. California, 384 U.S. 757, 771B72 (1966).

$          Strip searches accompanied by beatings or
insulting and intimidating comments and jokes.  See Arruda v. Berman,
522 F. Supp. 766, 768 (D. Mass. 1981).

 

Therefore, we conclude
appellant=s search was conducted in a reasonable place and manner.  After
considering all of the Bell factors and the circumstances surrounding
appellant=s arrest, we hold that the law-enforcement officers conducted a
reasonable search incident to arrest.  Therefore, the trial court did not abuse
its discretion in denying appellant=s motion to suppress the cocaine that
was found during the search of her person.

We
overrule appellant=s first point of error.

                                                CONSENT
TO SEARCH HOUSE








In her
second point of error, appellant challenges the trial court=s implicit finding that she
voluntarily consented to a search of her house.  We begin our analysis by
presuming that the warrantless police entry into appellant=s home was unreasonable, unless the
entry falls within a well-delineated exception to the warrant requirement.  See
Johnson v. State, 226 S.W.3d 439, 443 (Tex. Crim. App. 2007).  Voluntary
consent to search is an exception to the warrant requirement.  Id.  The
State must present evidence establishing by clear and convincing evidence that
consent was voluntarily and freely given, and not as a result of duress or
coercion.  See Carmouche, 10 S.W.3d at 331.  Whether consent was
voluntary involves a question of fact that is determined from the totality of
the circumstances.  See id.; Johnson, 226 S.W.3d at 443.  If the
trial court=s finding that consent was free and voluntary is supported by clear and
convincing evidence in the record, we will not disturb that finding.  See
Carmouche, 10 S.W.3d at 331.  As before, we review the historical facts in
the light most favorable to the trial court=s implied ruling that consent was
voluntary.  See Martinez v. State, 17 S.W.3d 677, 683 (Tex. Crim. App.
2000).

In
making a determination of voluntariness, courts may consider various factors,
including the defendant=s age, education and intelligence; the length of detention;
any constitutional advice given to the defendant; the repetitiveness of
questioning; and the use of physical punishment.  See Flores v. State,
172 S.W.3d 742, 749B50 (Tex. App.CHouston [14th Dist.] 2005, no pet.).  We may also consider
whether appellant was in custody; whether she was handcuffed; whether she had
been arrested at gunpoint; whether law enforcement had already engaged in an
illegal search; whether incriminating evidence had been uncovered at the time
of consent; whether Miranda warnings were given; and whether the
defendant had the option to refuse to consent.  See Reasor v. State, 12
S.W.3d 813, 818 (Tex. Crim. App. 2000).  The record does not contain
information as to several of these factors.[6]

Giving proper deference to the trial
court=s ruling, the facts surrounding
appellant=s consent to search are as follows:

$          Appellant was twenty-seven years old at the time of the
arrest.

$          Appellant was lawfully arrested for admitted traffic
violations, and a search incidental to arrest revealed a bag of cocaine
concealed within appellant=s bra.

$          Appellant was advised of her Miranda rights before her
consent to search was requested, including her rights to an attorney, to remain
silent, and to stop the interview at any point.  By volunteering to speak with
the officers, she indicated that she understood, and was willing to waive, each
of those rights.








$          Appellant signed a written consent to search her house.[7] 
Officer Hernandez testified that she signed the consent voluntarily.  He
further testified that no promises or threats were made to her, that appellant
was not coerced Ain any way,@
and that appellant signed the consent Acompletely
freely and voluntarily.@  Appellant=s
testimony also confirmed that she freely signed the consent form, and that she
likewise granted oral permission for the search.

$          Appellant accompanied the
officers to the house and unlocked the door.  She secured her pit-bull dogs
and, for the officers= safety, informed them that there were guns in the house.  She
also volunteered that powdered cocaine could be found in a shirt pocket in her
bedroom closet.  At no point did appellant ask that the officers stop
searching, or request that counsel be present before the search could continue.

At the
suppression hearing, appellant testified that she was told that the officers
had a warrant that was ready to be signed and that Athey were getting in [her] house one
way or another that night.@[8]  She claims to have been told that,
if she did not consent, they would kick her door down and shoot her pit-bull
dogs if necessary to protect themselves.  Although she admitted to signing the
consent form, then, she felt pressured and coerced into doing so.  She had been
caught in possession of cocaine, and decided to cooperate simply because she Awanted this to be done with.@  However, Officer Hernandez
specifically denied representing that a warrant was imminent, or threatening to
enter the house forcibly or to shoot  appellant=s dogs.  Because the trial judge=s decision whether to believe the
officer or appellant was based on credibility and demeanor, we give almost
total deference to the implicit decision to disregard appellant=s testimony.  See Loserth v. State,
963 S.W.2d 770, 772 (Tex. Crim. App. 1998).








Under
these facts, we cannot say that the trial court abused its discretion in
deciding appellant voluntarily gave consent to search her house.  Consent is
not rendered involuntary merely because appellant was under arrest.  See
Meeks v. State, 692 S.W.2d 504, 509 (Tex. Crim. App. 1985).  Appellant was
advised of her constitutional rights, including her right not to even speak
with the officers, and such advice can be Aa very important factor indicating
that a subsequent consent to search is voluntary.@  Lackey v. State, 638 S.W.2d
439, 451 (Tex. Crim. App. 1982).  There is no indication that appellant was
physically punished, or that the officer=s guns were ever used or displayed.  See
id.  To the contrary, Officer Hernandez=s testimony that no coercion was
involved is evidence of the voluntary nature of appellant=s consent.  See Martinez, 17
S.W.3d at 683.  Further, in addition to giving oral consent to search,
appellantCan adult womanCsigned a written consent form.  See Lackey, 638 S.W.2d
at 452 (AGenerally, a person will consider a
decision with more care and deliberation if she signs something rather than
making an off-hand verbal consent.@).  Finally, consent to search may be
implied where a person, like appellant, volunteers unsolicited information that
evidence can be found in a specific area.  See, e.g., United States v.
Rodriguez-Preciado, 399 F.3d 1118, 1131 (9th Cir. 2005), cert. denied,
127 S. Ct. 1260 (2007); United States v. Rosi, 27 F.3d 409, 413B14 (9th Cir. 1994).

That
appellant, an adult woman, was scared or upset at the time she gave consent
does not necessarily render such consent involuntary.  See Lackey, 638
S.W.2d at 450B51.  After all, Awhile most confrontations with the police are uncomfortable .
. . >the Constitution does not guarantee
freedom from discomfort.=@ Carmouche, 10 S.W.3d at 333
(quoting State v. Velasquez, 994 S.W.2d 676, 679 (Tex. Crim. App.
1999)).

We
overrule appellant=s second point of error.      

 

 

 








                                                                CONCLUSION

We find
no error in the appellate record.  We therefore affirm the trial court=s denial of appellant=s motion to suppress.

 

 

 

/s/      J. Harvey Hudson

Senior Justice

 

 

 

Judgment Rendered and Memorandum
Opinion filed November 18, 2008.

Panel consists of Justices Anderson
and Frost, and Senior Justice Hudson.*

Do Not Publish.  Tex. R. App. P.
47.2(b).









            [1]  Appellant cites
the Texas Constitution only once in her briefing, and has not provided separate
authority or argument for her state constitutional claims.  Therefore, we
decline to address them.  See Heitman, 815 S.W.2d at 690 n.23; McCambridge
v. State, 712 S.W.2d 499, 501B02
n.9 (Tex. Crim. App. 1986) (AAttorneys, when
briefing constitutional questions, should carefully separate federal and state
issues into separate grounds and provide substantive analysis or argument on
each separate ground.@).





            [2]  The
Transportation Code does not authorize an arrest for speeding or a violation of
the open container law.  See Tex. Transp. Code Ann. ' 543.004 (Vernon Supp. 2008).





            [3]  See also
United States v. Bizier, 111 F.3d 214, 218 (1st Cir. 1997) (AThe probable cause justifying a lawful custodial
arrest, and therefore a search incident to that arrest, need not be for the
charge eventually prosecuted.@).





            [4]  Appellant
insists that she was frisked three times, and that the female officer
discovered the lump in her clothing during the third pat-down.  She argues that
the multiple pat-downs amounted to an improper Afishing expedition.@  See, e.g.,
Goudeau v. State, 209 S.W.3d 713, 719 (Tex. App.CHouston [14th Dist.] 2006, no pet.).  Generally, an
officer who performs a Terry pat-down frisk may not continue to invade a
suspect=s right to be free of police intrusion once the
officer is satisfied that the suspect has no weapons.  See In re A.D.D.,
974 S.W.2d 299, 306 (Tex. App.CSan Antonio
1998, no pet.) (citing Terry v. Ohio, 392 U.S. 1, 25B26 (1968)).  However, the standards that govern a
search incidental to a lawful arrest are not limited to the Astricter Terry standards.@  Robinson, 414 U.S. at 234; United States
v. Thomas, 512 F.3d 383, 387 (7th Cir. 2008) (ABecause we find that Thomas was searched pursuant to a
lawful arrest for resisting arrest, it is irrelevant whether the pat-down search
was justified under Terry.@). 
We are unaware of any authority holding that a defendant who was lawfully
arrested may be frisked only once.





            [5]  Appellant
contends the search was not conducted pursuant to Houston Police Department
protocols, which apparently require, among other things, the presence of a
third person during a strip search.  However, an otherwise reasonable search
does not become constitutionally impermissible under the Fourth Amendment
merely because it allegedly fails to satisfy state or local procedures.  See
United States v. Brack, 188 F.3d 748, 759 (7th Cir. 1999).





            [6]  For example, the
record reflects that appellant was handcuffed following her arrest, but that
appellant was unrestrained for the search inside the Subway restroom.  The
record does not expressly indicate whether appellant was handcuffed when she
signed the consent form.





            [7]  The written
consent is not contained in the appellate record.  See Amador v. State,
221 S.W.3d 666, 675 (Tex. Crim. App. 2007) (AIt
was ... appellant=s burden to bring forward a record on appeal
sufficient to show that the trial court erred in his ruling on the motion to
suppress.@).





            [8]  Consent to
search is not invalid merely because an officer tells a defendant that he will
obtain a warrant if the defendant does not consent.  See Almaguer v. State,
960 S.W.2d 172, 176 n.4 (Tex. App.CCorpus
Christi 1997, no pet.) (citing Resendez v. State, 523 S.W.2d 700, 703
(Tex. Crim. App. 1975)).





            *           Senior
Justice J. Harvey Hudson sitting by assignment.