NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 18, 2021[*]
Decided July 6, 2021

**Before**

DIANE S. SYKES, *Chief Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-2655

| | |
|---|---|
| CHARLES BROWN,<br>    *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Eastern District of Wisconsin. |
| *v.* | No. 17-CV-525 |
| KEVIN J. KAZMIERSKI,<br>    *Defendant-Appellee.* | Nancy Joseph,<br>*Magistrate Judge.* |

**O R D E R**

Kevin Kazmierski, a Racine County Deputy Sheriff, stopped a car in which Charles Brown was a passenger and frisked him on the side of a highway, finding heroin. Brown has sued Kazmierski under 42 U.S.C. § 1983, asserting that the stop and frisk violated his rights against unreasonable searches and seizures under the Fourth Amendment. The district court entered summary judgment against Brown, ruling that Kazmierski had reasonable suspicion to stop the car and that the behavior and recent

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

convictions of the car's occupants justified his further actions. Because that reasoning is correct, we affirm.

We recount the facts about the stop and frisk in the light most favorable to Brown. *See Lopez v. Sheriff of Cook Cnty.*, 993 F.3d 981, 984 (7th Cir. 2021). While patrolling Interstate 94, Kazmierski saw a car with a partially obstructed rear license plate and no front license plate. From an electronic search of license-plate records, he learned that the registered owner (Lakisha Hughes) had a suspended license. The woman who was driving the car matched a description for Hughes, so Kazmierski signaled for the driver to pull over. The driver slowed down in a manner that led Kazmierski to believe that she was resisting the signal to stop, but eventually she pulled over. Upon questioning the occupants, Kazmierski learned that neither the driver, Monica Johnson, nor Brown was the registered owner. Johnson asserted that she had just bought the car and had not yet transferred the title.

Kazmierski extended the stop beyond the initial questioning. When Kazmierski approached the car, he had smelled an "overpowering odor" of air freshener. In his experience from other traffic stops, "[a]ir fresheners are frequently used as a masking agent to hide the odor of drugs" and "many drug traffickers use Interstate 94 to transport drugs." After receiving identification from the occupants, he performed criminal-record checks and learned that both occupants had drug-related convictions. In particular, Brown had just completed serving a term of supervised release for possessing and intending to distribute cocaine and for possessing a firearm in furtherance of a violent crime. With this information, Kazmierski radioed to the K9 unit and asked the unit to bring a canine to examine the car. The unit arrived 10 minutes later, and the canine alerted to drugs in the car.

Kazmierski then frisked Brown on the side of the highway. He checked the area near Brown's groin for about three minutes and felt a hard, softball-sized object. Kazmierski pulled the waist of Brown's pants forward, and another officer reached inside Brown's underwear and retrieved a bag containing 200 grams (about a half pound) of heroin. Brown later pleaded guilty to possessing over 50 grams of heroin.

Brown sued Kazmierski under § 1983, alleging that these events violated his rights against unreasonable searches and seizures under the Fourth Amendment. In an earlier appeal, we ruled that a magistrate judge, presiding by consent, had wrongly relied on *Heck v. Humphrey*, 512 U.S. 477 (1994), to enter summary judgment against Brown. *Brown v. Racine Cnty.*, 775 F. App'x 256, 257 (7th Cir. 2019). On remand, a

different magistrate judge again entered summary judgment against Brown, reasoning that Kazmierski's actions were lawful.

On appeal, Brown first argues that Kazmierski lacked reasonable suspicion for the traffic stop. An officer may briefly stop a car based on a reasonable suspicion that a passenger is involved in a crime. *See Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020). Kazmierski had such reasonable suspicion. Before stopping the car, he checked the car's registration records, which is permissible. *See United States v. Miranda-Sotolongo*, 827 F.3d 663, 667–68 (7th Cir. 2016). He learned that the car's owner, who resembled the current driver, had a suspended license. This knowledge easily satisfied the reasonable suspicion needed to justify the traffic stop. *See Glover*, 140 S. Ct. at 1188–89.

Brown next contends that, after Kazmierski determined that the driver did not have a suspended license, he unreasonably prolonged the stop to call the K9 unit. After the initial purpose of a traffic stop is over, an officer may extend the stop for the time reasonably needed to arrange for a canine to examine the car if the officer has reason to suspect illegal drug activity. *See Rodriguez v. United States*, 575 U.S. 348, 355 (2015). Brown asserts that the mere presence of an air freshener was not reason enough to suspect a drug crime. *See United States v. Rodriguez-Escalera*, 884 F.3d 661, 670 (7th Cir. 2018). But other undisputed facts gave Kazmierski reasonable suspicion: Neither occupant was the car's registered owner, a criminal-record check revealed that they both had drug convictions, and Kazmierski thought that the driver was evading the signal to stop. Further, the car did not merely have an air freshener—the freshener's scent was "overpowering." Based on Kazmierski's experience, which we may consider in assessing reasonableness, *see United States v. Riley*, 493 F.3d 803, 808 (7th Cir. 2007), these combined events reasonably signaled possible drug activity. Kazmierski thus had more than enough justification to extend the stop for the canine search. *See United States v. Sanford*, 806 F.3d 954, 959 (7th Cir. 2015).

Finally, Brown attacks the legality of the frisk. He begins by arguing that the officers lacked the required reasonable suspicion that he was armed and dangerous. *See Arizona v. Johnson*, 555 U.S. 323, 326–27 (2009). But "guns are known tools of the drug trade." *United States v. Thompson*, 842 F.3d 1002, 1007 (7th Cir. 2016). Before he began the frisk, Kazmierski knew that Brown had recently completed a sentence for both drug and gun crimes, and the canine had just alerted to drugs in the car. This knowledge gave the deputy ample reason to suspect that Brown may be armed and therefore justified the protective frisk for weapons. *See id.*

Brown next contends that Kazmierski unreasonably prolonged the frisk. But to ensure officer safety, the three-minute protective frisk was well within the bounds that the Supreme Court authorized in *Terry v. Ohio*, 392 U.S. 1 (1968). Moreover, Kazmierski stopped frisking Brown as soon as he felt something "hard" and as large as a softball, at which point the police, having reasonable suspicion to retrieve it as a possible weapon, did so. *See United States v. Ford*, 872 F.3d 412, 417 (7th Cir. 2017).

Further, Brown argues that the search of his groin area was unreasonable because it occurred on the side of the highway. The reasonableness of a search depends on "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). We have ruled that an officer conducts a reasonable, protective search on a public street when the arrest occurs there, the officer frisks the defendant's outer clothes, detects a hard object in the groin area, and reaches into the suspect's underwear to retrieve it. *See United States v. Thomas*, 512 F.3d 383, 388–89 (7th Cir. 2008). Under this standard, the manner of the search was reasonable. Although it occurred on a highway, that is where a possibly armed Brown faced the officers, so Kazmierski reasonably searched him there. *See id.* Further, Brown does not contend that, when the police retrieved the detected hard object, they exposed his genitals to any passerby or otherwise harassed or humiliated him. Thus, the search was reasonable. *See, e.g., United States v. Williams*, 209 F.3d 940, 943–44 (7th Cir. 2000).

AFFIRMED